**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTOLIN ANDREWS,
              *Plaintiff-Appellant,*

UNITED STATES OF AMERICA,
              *Intervenor,*

v.

V. R. KING, Appeals Coordinator;
S. CERVANTES; T. DICKINSON; ED
ALAMEDIA, Director of CDC;
MCPHERESON, Correctional Officer;
FIELDS, Lt.,
              *Defendants-Appellees.*

No. 02-17440

D.C. No.
CV-01-02316-
GEB(GGH)

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted
July 13, 2004—San Francisco, California

Filed February 11, 2005
Amended February 22, 2005

Before: Ferdinand F. Fernandez, Richard A. Paez, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Paez;
Partial Concurrence and Partial Dissent by Judge Fernandez

**COUNSEL**

Rohit K. Singla, Munger, Tolles & Olson LLP, San Francisco, California, for the plaintiff-appellant.

Maria G. Chan, Deputy Attorney General for the State of Califonia, Sacramento, California, for the defendants-appellees.

Barbara L. Herwig and Stephanie R. Marcus, Civil Division, Department of Justice, Washington, D.C., for the intervenor.

## ORDER

The opinion filed on February 11, 2005 is amended to include Judge Fernandez's concurring and dissenting opinion.

## OPINION

PAEZ, Circuit Judge:

Appellant Antolin Andrews, an inmate in California State Prison-Solano ("CSP-Solano"), filed a pro se complaint under 42 U.S.C. § 1983 challenging the way in which the prison officials administered the process for resolving prisoner grievances. After the district court granted Andrews' motion to proceed *in forma pauperis* ("*IFP*"), the defendants filed a motion for summary judgment, arguing that Andrews was not entitled to proceed *IFP* under the "three strikes" provision of 28 U.S.C. § 1915(g).[1] The district court granted the defen-

---

[1]Section 1915(g) was enacted as part of the 1996 Amendments to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321, § 804(d) ("PLRA") and provides that:

> In no event shall a prisoner bring a civil action or appeal . . . under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

dants' motion and ultimately dismissed Andrews' complaint without prejudice, ruling that Andrews had failed to demonstrate that he did not have three strikes under § 1915(g).

Whether the burden of establishing the existence or nonexistence of three strikes rests with the defendant or with the prisoner-plaintiff is an issue of first impression in this circuit. We hold that when the defendant challenges a prisoner's right to proceed *IFP*, the defendant bears the burden of producing sufficient evidence to establish that § 1915(g) bars the plaintiff's *IFP* status. Once the defendant has made out a prima facie case, the burden shifts to the plaintiff to persuade the court that § 1915(g) does not apply. Because here the defendants did not meet their initial burden, we reverse the district court's dismissal of Andrews' complaint and remand for further proceedings.

## I.   Facts and Procedural History

Andrews is a state inmate incarcerated in CSP-Solano. Seeking damages and injunctive relief, Andrews filed a pro se civil rights action under 42 U.S.C. § 1983 against the defendants V.R. King, S. Cervantes, T. Dickinson and Lt. McPhereson, prison officials at CSP-Solano, and Ed Alamedia, the Director of the California Department of Corrections (collectively "the State defendants"). Andrews alleged that the State defendants administer the prisoner grievance administrative process at CSP-Solano to effectively deny prisoners access to the federal courts by making it "almost impossible" to exhaust the prison's administrative reme-

---

This subdivision is commonly known as the "three strikes" provision. "Strikes" are prior cases or appeals, brought while the plaintiff was a prisoner, which were dismissed "on the ground that [they were] frivolous, malicious, or fail[ ] to state a claim" are generically referred to as "strikes." Pursuant to § 1915(g), a prisoner with three strikes or more cannot proceed *IFP*.

dies.[2] The district court initially granted Andrews' request to proceed *IFP*.

The State defendants did not respond to Andrews' complaint. Instead, they filed a motion for summary judgment under Fed. R. Civ. P. 56(d). In their motion, the State defendants argued that Andrews had acquired three strikes and, as proof of the existence of those strikes, they attached records from the federal courts' Public Access to Court Electronic Records ("PACER") system showing the docket records for twenty-two actions in which Andrews was the plaintiff and the cases had been dismissed. The State defendants also attached an order from the Superior Court of Los Angeles County that deemed Andrews a vexatious litigant. The State defendants did not provide the district court with copies of the underlying dismissal orders or present any other evidence regarding the reasons for the dismissals.

Andrews opposed the motion, stating that he had not filed three or more actions that were frivolous, malicious or that failed to state a claim within the meaning of 28 U.S.C. § 1915(g). He further argued that the PACER records attached to the State defendants' motion were insufficient to establish the "three strikes" necessary to deny him *IFP* status under § 1915(g).

The Magistrate Judge issued an Order and Findings and Recommendations recommending that the district court grant the State defendants' motion for summary judgment. The Findings and Recommendations determined that plaintiffs bear the burden of proving their qualification for *IFP* status. The Magistrate Judge found that plaintiffs bear the initial production burden, stating: "it is up to plaintiffs to describe their previous litigations against different defendants; present defendants should not have to perform this research." The

---

[2]The PLRA requires that prisoners exhaust prison administrative remedies before bringing an action in federal court. *See* 42 U.S.C. § 1997e(a).

Findings and Recommendations also determined that it was Andrews' burden to negate the defendants' "prima facie showing that the number of federal suits filed disqualified [him] from proceeding *IFP*." Thus, the Magistrate Judge recommended that because Andrews had failed to rebut the State defendants' showing regarding his litigation history, he was not entitled to proceed *IFP* in filing his 42 U.S.C. § 1983 action.

The Magistrate Judge then reasoned that even if the burden were not on Andrews to prove that he had fewer than three strikes, "the record shows sufficient strikes to warrant *IFP* disqualification."[3] The Magistrate Judge concluded, however, that dismissed habeas petitions do not constitute strikes under 28 U.S.C. § 1915(g). Nonetheless, the Magistrate Judge determined that Andrews had at least three dismissals that constituted strikes within the meaning of § 1915(g), and recommended that Andrews' case be dismissed without prejudice.

Andrews filed objections to the Magistrate Judge's Findings and Recommendations in which he argued that, under the plain text of the statute, only cases dismissed as frivolous or malicious or for failure to state a claim count as strikes and that the State defendants had not met their burden of showing that he had three or more such strikes. The State defendants also filed objections to the Findings and Recommendations, in which they objected to the recommendation that petitions for writs of habeas corpus do not count as "strikes" for purposes of § 1915(g).

---

[3]The Magistrate Judge counted the following five cases as strikes: (1) an appeal that was dismissed for lack of jurisdiction (*Andrews v. Croker*, No. 98-55330 (9th Cir.)); (2) a case that was dismissed for failure to state a claim (*Rudder v. Vargas & Associates*, No. 94-CV-67 (D.C. Cir.)); (3) a case that was dismissed without leave to amend (*Rudder v. Revitz*, 93-CV-2778 (C.D. Cal.); and (4) two other district court cases that had been dismissed with prejudice (*Rudder v. Dep't of Justice*, No. 93-CV-1913 (C.D. Cal.) and *Andrews v. Croker*, No. 97-CV-5333 (C.D. Cal.)).

The district court adopted the Magistrate Judge's Findings and Recommendations in full and dismissed Andrews' action without prejudice. This appeal followed.

## II.   Jurisdiction

The State defendants initially contend that we lack jurisdiction to review the district court's order dismissing Andrews' action without prejudice "because this is a matter in abatement" under 28 U.S.C. § 2105.[4] The State defendants argue that the revocation of Andrews' *IFP* status does not address the merits of his claims under 42 U.S.C. § 1983 and therefore, it "fits within the definition of a 'matter in abatement.' "[5]

We disagree. Although the defendants styled their complaint as one for summary judgment under Rule 56(d), they are in fact seeking to vacate the district court's order permitting Andrews to proceed *IFP*. The denial of a motion to proceed *IFP* is appealable as a final judgment under 28 U.S.C. § 1291. *See Roberts v. United States Dist. Ct. for the N. Dist.*, 339 U.S. 844, 845 (1950) ("The denial by a district judge of a motion to proceed in forma pauperis is an appealable order."); *Lipscomb v. U.S.*, 301 F.2d 905, 905 (9th Cir. 1962) ("An order denying leave to proceed in the district court in forma pauperis is appealable.").

Moreover, even if we considered the defendants' motion as one for summary judgment, this is not a "matter in abatement" because our review of the dismissal of a prisoner's claim on the ground that he should not proceed *IFP* involves

---

[4]"One of the most commonly ignored provisions of the Judicial Code," 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3903, at 139 (1992), 28 U.S.C. § 2105 provides that: "There shall be no reversal in the Supreme Court or court of appeals for error in ruling upon matters in abatement which do not involve jurisdiction."

[5]A "matter in abatement" is "the suspension or defeat of an action for a reason unrelated to the merits of the claim." *Black's Law Dictionary* 3 (8th ed. 2004).

a decision on the merits. That is, Andrews would not otherwise have the opportunity to address whether any of the prior cases constitute a "strike" under § 1915(g) or to correct the district court's allegedly erroneous denial of *IFP* status.

Accordingly, we reject the State's challenge to our jurisdiction and hold that we have jurisdiction to review the district court order dismissing Andrews' case.

### III.   Defendants' Motion for Summary Judgment

Andrews challenges the district court's determination that because he had acquired three strikes within the meaning of § 1915(g) he could not proceed *IFP*. We review "*de novo* a grant of summary judgment and must determine whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (citation omitted).[6] The district court's interpretation and application of § 1915(g) is also subject to *de novo* review. *See Tierney v. Kupers*, 128 F.3d 1310, 1311 (9th Cir. 1997).

---

[6]Although the State defendants styled their motion as a motion for summary judgment under Rule 56(d), it was effectively a motion to vacate the order allowing Andrews to proceed *IFP* because he was precluded from doing so under § 1915(g). Because Andrews did not dispute the fact that he had filed at least twenty-two lawsuits that had been dismissed and that he had been declared a vexatious litigant, what is at stake here are the legal consequences that flow from these undisputed facts. Thus, whether we treat the State defendants' motion under Rule 56(d) or a motion to vacate makes little difference. In either circumstance, we review *de novo* the district court's interpretation of § 1915(g) and related legal conclusions. *See Balint v. Carson City, Nev.*, 180 F.3d 1047, 1050 (9th Cir. 1999); *Jeff D. v. Kempthorne*, 365 F.3d 844, 850-51 (9th Cir. 2004).

### A.   Burdens of Production and Persuasion

To determine whether the district court erred in dismissing Andrews' complaint, we must address whether Andrews or the State defendants bore the burden of production to show that Andrews was not entitled to proceed *IFP* under the PLRA's three strikes provision.

[1] Although we have not previously addressed this particular provision of the PLRA, we addressed a similar question in the context of the PLRA's exhaustion requirement. *See* 42 U.S.C. § 1997e(a).[7] In *Wyatt v. Terhune*, we concluded that the PLRA's exhaustion requirement creates an affirmative defense that must be raised and proved by the defendant. *See* 315 F.3d 1108, 1117-18 (9th Cir. 2003). In so deciding, we reasoned that we would not impose a heightened pleading requirement where Congress had not expressly instructed us to do so. *See id.* at 1118 (citing *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)). Moreover, we recognized that imposing such a requirement on prisoners "would be contrary to the liberal approach we take to pleadings by *pro se* prisoners" and also unrealistic, given that "prison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners." *Id.* at 1119.

[2] We find that our decision in *Wyatt* provides a helpful paradigm for deciding which party has the burden of establishing the existence or nonexistence of three strikes under 28 U.S.C. § 1915(g). First, as in *Wyatt*, we do not discern in the relevant statute an express congressional intent to place the

---

[7]Section 1997e(a) of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

initial burden on the prisoner-plantiff. *See Wyatt*, 315 F.3d at 1118. Indeed, § 1915 explicitly details the requirements for prisoners applying to proceed *IFP, see* § 1915(a)(1) & (2), and although prisoners must demonstrate that they are not able to pay the filing fee with an affidavit and submission of their prison trust account records, *see id.*, Congress did not require prisoners to declare that § 1915(g) does not bar their request to proceed *IFP*.[8] Had Congress intended to require prisoners to affirmatively show that they were not subject to the three strikes provision, we have no doubt that it would have included that requirement in the list of requirements prisoners must address in order to obtain *IFP* status. *See* Wyatt, 315 F.3d at 1118 ("Legislatures know how to indicate . . . a pleading requirement when they want to.").

[3] Moreover, we agree with Andrews that here, as in *Wyatt*, considerations of policy and fairness militate in favor of imposing the burden on the State defendants to produce evidence to demonstrate that the prisoner should be denied *IFP* status because he had three strikes under § 1915(g). Here, Andrews alleged that, as a prisoner, he cannot maintain files for each lawsuit that he has previously brought.[9] Andrews also

---

[8]Indeed, such a requirement would be difficult, if not impossible, to meet, given that, in dismissing a prisoner's action, the district court is not required to determine whether the prisoner's case is frivolous, malicious or fails to state a claim and therefore will count as a future strike under § 1915(g). *See e.g.*, *Rodriguez v. Cook*, 169 F.3d 1176, 1178 (9th Cir. 1999); *DeLeon v. Doe*, 361 F.3d 93, 95 (2d Cir. 2004); *Wilson v. Yaklich*, 148 F.3d 596, 602-03 (6th Cir. 1998); *Patton v. Jefferson Corr. Cir.*, 136 F.3d 458, 461 (5th Cir. 1998); *Lucien v. Jockish*, 133 F.3d 464, 469 n.8 (7th Cir. 1998). Because district courts do "not issue these strikes one by one, in their orders of judgment," *DeLeon*, 361 F.3d at 95, most prisoners would not be able to determine whether they have accumulated any strikes within the meaning of § 1915(g) prior to filing an application to proceed *IFP*.

[9]In his current facility, Andrews represents that he is permitted only six cubic feet of possessions—and that this is not enough space to maintain comprehensive files. The State defendants do not challenge this representation.

stated that he does not have access to PACER nor can he visit clerks' offices to obtain relevant orders. Moreover, because he is indigent, Andrews cannot order the relevant documents directly from the court or pay a third-party, such as a court filing service, to obtain the records for him. The State defendants do not dispute these facts. The State defendants, on the other hand, have greater access to prison administrative records, court documents and a host of knowledgeable attorneys who have represented the state prison officials in lawsuits brought by state prisoners. *See Wyatt*, 315 F.3d at 1119.

**[4]** Therefore, we hold that if defendants challenge a prisoner-plaintiff's *IFP* status, then the initial production burden rests with the defendants. Thus, when challenging a prisoner's *IFP* status, the defendants must produce documentary evidence that allows the district court to conclude that the plaintiff has filed at least three prior actions that were dismissed because they were "frivolous, malicious or fail[ed] to state a claim." § 1915(g). In some instances, the district court docket records may be sufficient to show that a prior dismissal satisfies at least one of the criteria under § 1915(g) and therefore counts as a strike. However, in many instances, the docket records will not reflect the basis for the dismissal. In these instances, the defendants may not simply rest on the fact of dismissal. Rather, the defendants must produce court records or other documentation that will allow the district court to determine that a prior case was dismissed because it was "frivolous, malicious or fail[ed] to state a claim." § 1915(g).

**[5]** Once the defendants have met this initial burden, the burden then shifts to the prisoner, who must attempt to rebut the defendants' showing by explaining why a prior dismissal should not count as a strike. We agree with the approach taken by our sister circuit in *Evans v. Ill. Dep't of Corrs.*, 150 F.3d 810, 811-12 (7th Cir. 1998). In *Evans*, the Seventh Circuit found that by identifying three specific examples of potential strikes, the district court put the plaintiff on notice

as to what it had considered in denying his request to proceed *IFP*. *Id*. The burden of persuasion then shifted to the plaintiff to show that prior dismissals did not qualify as strikes. In sum, once a prisoner has been placed on notice of the potential disqualification under § 1915(g) by either the district court or the defendant, the prisoner bears the ultimate burden of persuading the court that § 1915(g) does not preclude *IFP* status.

**[6]** Because the district court incorrectly determined that Andrews bore the initial burden of producing evidence to show that he was not disqualified under § 1915(g), and because we find that the State defendants did not present sufficient evidence regarding the prior dismissals to establish a prima facie case of *IFP* disqualification under § 1915(g), we vacate the judgment and remand for further proceedings.

### B.   The Meaning of a "Strike"

To provide guidance to the district court on remand, we address the district court's interpretation of a "strike" under § 1915(g). Section 1915(g) states that a prisoner may not proceed *IFP* "if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it was frivolous, malicious or fails to state a claim upon which relief could be granted." § 1915(g).

In applying § 1915(g) to disqualify Andrews from proceeding *IFP*, the district court gave an expansive interpretation of the clause "frivolous, malicious or fails] to state a claim." Thus, for example, without determining that the case was frivolous, malicious or failed to state a claim, the district court nonetheless determined that the Ninth Circuit's dismissal of an appeal for lack of jurisdiction constituted a strike under § 1915(g). We disagree with this approach.

The PLRA does not define the terms "frivolous," or "malicious," nor does it define dismissals for failure to "state a claim upon which relief could be granted." We have held that the phrase "fails to state a claim on which relief may be granted," as used elsewhere in § 1915, "parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (interpreting § 1915(e)(2)(B)(ii) and employing the same *de novo* standard of review applied to Rule 12(b)(6) motions). Yet there is no Ninth Circuit case law on the 1996 Amendments to the PLRA that explains precisely what the terms "frivolous" or "malicious" mean. In defining these terms, we look to their "ordinary, contemporary, common meaning." *Wilderness Soc'y v. United States Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (en banc) (internal quotation marks and citations omitted). Thus, a case is frivolous if it is "of little weight or importance: having no basis in law or fact." *Webster's Third New International Dictionary* 913 (1993); *see also Goland v. United States*, 903 F.2d 1247, 1258 (9th Cir. 1990) (adopting a definition of "frivolous"). A case is malicious if it was filed with the "intention or desire to harm another." *Webster's Third New International Dictionary* 1367 (1993).

Not all unsuccessful cases qualify as a strike under § 1915(g). Rather, § 1915(g) should be used to deny a prisoner's *IFP* status only when, after careful evaluation of the order dismissing an action, and other relevant information, the district court determines that the action was dismissed because it was frivolous, malicious or failed to state a claim.

Here, the State defendants attempted to meet their burden of production by pointing to the fact that Andrews had filed at least twenty-two prior cases that had been dismissed. This was insufficient to shift the burden to Andrews. Although the Magistrate Judge, relying on the PACER docket records, identified prior cases that potentially qualified as strikes under § 1915(g), only one case plainly qualified as a strike because the docket record showed that it was dismissed for failure to

state a claim under Rule 12(b)(6). As for the four other cases, the Magistrate Judge determined that each one counted as a strike without considering the underlying court orders or making an independent assessment of whether the prior cases were frivolous or malicious or failed to state a claim.

**[7]** We hold that, under the plain language of § 1915(g), the prior dismissals would qualify as strikes only if, after reviewing the orders dismissing those actions and other relevant information, the district court determined that they had been dismissed because they were frivolous, malicious or failed to state a claim. *See* § 1915(g). Under the circumstances, we must remand this case to the district court so it can make the necessary determinations on the basis of a more complete factual record.

### C.   Dismissals While in INS Detention

**[8]** Andrews argues that he was not a "prisoner" for the purposes of 28 U.S.C. § 1915(g) when he filed three of the actions that the district court counted as strikes.[10] We hold that dismissals of actions brought while a plaintiff was in the custody of the INS do not count as "strikes" within the meaning of § 1915(g), so long as the detainee did not also face criminal charges. *See Agyeman v. INS*, 296 F. 3d 871, 885-86 (9th Cir. 2002).

**[9]** The language of § 1915(g) does not limit the type of facility in which a plaintiff must be detained when the prior actions were filed. It states that a prisoner may not proceed *IFP* if the three dismissed actions were filed while the prisoner was "incarcerated or detained in any facility." § 1915(g). Yet the scope of § 1915 is narrowed to plaintiffs who are in custody as the result of a conviction or who have been detained for an alleged criminal law violation:

---

[10]Andrews refers to *Rudder v. Vargas & Associates*, No. 94-CV-67 (D.C. Cir.); *Rudder v. Revitz*, 93-CV-2778 (C.D. Cal.); and *Rudder v. Dep't of Justice*, No. 93-CV-1913 (C.D. Cal.).

As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pre-trial release or diversionary program.

§ 1915(h). Thus, a civil detainee is not a "prisoner" within the meaning of the PLRA. *Agyeman*, 296 F.3d at 886; *Page v. Torrey*, 201 F.3d 1136, 1139-40 (9th Cir. 2000) (holding that § 1915 "requirements apply only to 'prisoners.' . . . currently detained as a result of accusation, conviction, or sentence for a criminal offense.") (citations omitted).

**[10]** In *Agyeman*, we held that an INS detainee who does not also face criminal charges is not a prisoner under § 1915. 296 F.3d at 886; *see also LaFontant v. INS*, 135 F.3d 158, 165 (D.C. Cir. 1998) (same); *Ojo v. INS*, 106 F.3d 680, 682 (5th Cir. 1997) (same). Thus, if Andrews was not detained pursuant to "an accusation, conviction or sentence for a criminal offense" while in INS custody, he was a civil detainee and not subject to the PLRA's provisions. Under such circumstances, the dismissal of a case that Andrews filed while he was in the custody of the INS would not count as a strike for the purposes of § 1915(g).[11] On remand, Andrews bears the burden of establishing that he was in INS custody and that he was not facing criminal charges at the time he filed the actions.

---

[11]This interpretation comports with Congress's purpose in enacting the PLRA to prevent frivolous prison condition lawsuits filed by criminals. *See generally*, Joshua D. Franklin, Comment, *Three Strikes and You're Out of Constitutional Rights? The Prison Litigation Reform Act's "Three Strikes" Provision and Its Effect on Indigents*, 71 U. COLO. L. REV. 191 (2000); Brian J. Ostrom, Roger A. Hansen, and Fred L. Cheesman, *Congress, Courts and Corrections: An Empirical Perspective on the Prison Litigation Reform Act*, 78 NOTRE DAME L. REV. 1525 (2003).

## D.   Dismissals of Habeas Petitions

**[11]** Finally, we agree with the district court that dismissed habeas petitions do not count as strikes under § 1915(g).**[12]** We previously have held that the "PLRA's revised [in] forma pauperis provisions relating to prisoners do not apply to habeas proceedings." *Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir. 1997). In *Naddi*, we reasoned that the language of § 1915(g) does not encompass habeas petitions and also that Congress intended § 1915(g) to address civil rights and prison condition cases, not habeas petitions. *See id. See also Jennings v. Natrona County Det. Ctr. Med. Facility*, 175 F.3d 775, 779 (10th Cir. 1999) (holding that the "district court erred when it counted . . . prior habeas corpus action as a strike under § 1915(g)"); *In re Nagy*, 89 F.3d 115, 117 (2d Cir. 1996) (holding that the application of the PLRA to mandamus petitions depends on the nature of the relief sought— only if the prisoner's mandamus claim is analogous to the typical suits brought under 42 U.S.C. § 1983 complaining about prison conditions does the PLRA apply).

## E.   Constitutional Challenges

Andrews also argues that § 1915(g) is unconstitutional on its face and as applied to him. We previously have held that § 1915(g) is not facially unconstitutional. *Rodriguez v. Cook*, 169 F.3d 1176, 1181 (9th Cir. 1999). In *Rodriguez*, we found that deterring frivolous lawsuits is rationally related to a legitimate government interest and therefore does not violate the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 1180-81. We explained that "[b]udgetary concerns are a legitimate governmental interest and curbing the costs of defend-

---

**[12]**We recognize, however, that some habeas petitions may be little more than 42 U.S.C. § 1983 actions mislabeled as habeas petitions so as to avoid the penalties imposed by 28 U.S.C. § 1915(g). In such cases, the district court may determine that the dismissal of the habeas petition does in fact count as a strike for purposes of § 1915(g).

ing against frivolous litigation is rationally related to maintaining the budget." *Id*. Although we recognize that serious constitutional concerns would arise if § 1915(g) were applied to preclude those prisoners who had filed actions that were not "frivolous, malicious or fail[ed] to state a claim" from proceeding *IFP*, we do not decide Andrews' as-applied challenge because we can resolve this case on narrower grounds.

Accordingly, we vacate the dismissal and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

FERNANDEZ, Circuit Judge, concurring and dissenting:

I concur in the majority opinion, with the exception of part III-A and the second sentence of the second paragraph of part III-B. As to those three portions, I dissent.

A. *Burdens of Production and Persuasion*

Andrews asserts that the district court erred when it allocated to him the burden of proving that his prior dismissals did not constitute strikes. He posits that when the state tells the court that a prisoner should not have IFP status based on 28 U.S.C. § 1915(g), it should bear the final burden of persuading the court of the existence of three prior strikes. The majority and I agree that is not so.

The district court's allocation of the burden of persuasion is a question of law that we review de novo. *Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co.*, 940 F.2d 550, 555 (9th Cir. 1991); *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Although we have yet to rule on the issue, those circuits that have addressed it have placed the burden on the prisoner who

is seeking to file IFP. *See Day v. Maynard*, 200 F.3d 665, 666-67 (10th Cir. 1999) (per curiam) (section 1915(g) barred prisoner's action where he failed to persuade the court that his prior dismissals did not qualify as strikes); *Evans v. Ill. Dep't of Corrs.*, 150 F.3d 810, 812 (7th Cir. 1998) ("Having been notified [of the court's denial of his request to proceed IFP], Evans bore the burden of showing that the district court incorrectly assessed his litigation history."); *Rivera v. Allin*, 144 F.3d 719, 730 (11th Cir. 1998) ("[I]t is the prisoner's burden to produce sufficient record information about 'prior occasions' to the appellate court . . . ."). I join them. So, as I understand it, does the majority.

Where the majority and I disagree is on just what a defendant or the district court must point to in order to require the plaintiff to go forward and shoulder his burdens of production and persuasion.

In general, filing an action IFP is a privilege, not a right. *See, e.g.*, *Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir. 1999); *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998); *Rivera*, 144 F.3d at 724; *Startti v. United States*, 415 F.2d 1115, 1116 (5th Cir. 1969) (per curiam); *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir. 1965). Therefore, prisoners who desire that benefit have always been statutorily required to demonstrate that they financially qualify,[1] and with § 1915(g) Congress added one more hurdle that they must surmount. To place the burden of proving the existence of (or establishing a prima facie case of) three strikes on the state would be illogical for it would force a third party to demonstrate why a person should not obtain a benefit to which the person has no right in the first place. *See*, *e.g.*, *Aeroquip Corp. v. Aetna Cas. & Sur. Co., Inc.*, 26 F.3d 893, 895 (9th Cir. 1994) (allocating burden of persuasion to insured in part because it aligned the burden with the benefit).[2]

---

[1] 28 U.S.C. § 1915(a)(1).

[2] Allocating the burden of persuasion to the benefit-seeker has been common in other areas as well. For example, in the sentencing context, the

The more sound approach requires the party seeking IFP status to prove all of the prerequisites thereto, including the absence of three prior strikes. Under that framework, a prisoner has an incentive to file a motion for IFP status only if he knows that he can produce sufficient evidence to show that his prior dismissals do not qualify under § 1915(g), thus reducing frivolous IFP motions and effectuating the policy underlying the PLRA. *See Howard*, 894 F.2d at 1090.

But what about access to the relevant records? Andrews opines that the state is better situated to ascertain and provide courts with information regarding prisoners' prior dismissals. To bolster his assertion, he relies heavily on our pronouncement that, in the administrative exhaustion context, "prison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners," particularly where prisoners have been transferred to different facilities. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

Contrary to Andrews' intimation, although easier access to records can be relevant to the burden-allocation inquiry, it is not dispositive.[3] *See, e.g.*, *NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 301 (9th Cir. 1978). It was, in fact, only one

---

burden of proving facts that would warrant a reduced sentence rests on the defendant. *See Butler*, 970 F.2d at 1026; *United States v. Howard*, 894 F.2d 1085, 1089-90 (9th Cir. 1990); *see also United States v. Garcia*, 544 F.2d 681, 685-86 (3d Cir. 1976) ("One who affirmatively seeks special favor at sentencing has the burden of proving why it should be bestowed."). That is also true for disability-benefit claimants *see Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), as well as for tax-deduction suppliants, *see Norgaard v. Comm'r*, 939 F.2d 874, 877 (9th Cir. 1991).

[3]Actually, leading commentators have cautioned against its overemphasis. *See* McCormick, *supra*, § 337, at 413; Richard A. Epstein, *Pleadings and Presumptions*, 40 U. Chi. L. Rev. 556, 579-80 (1973); Edward W. Cleary, *Presuming and Pleading: An Essay on Juristic Immaturity*, 12 Stan. L. Rev. 5, 12 (1959).

amongst several factors underlying *Wyatt*. More importantly, evidence of prior dismissals is easily distinguishable from evidence of prison administrative records. The latter are likely produced by and stored at a prison facility; therefore, prison administrators are intimately familiar with them, and they are easily identifiable and accessible. As evidenced by this case, however, prisoners may file legal actions in numerous courts and under different names. Copies of those dismissals and the details of the nature of those cases would at least presumptively be more readily ascertained by the prisoner, who filed them and followed them to their conclusion, than they are by a third party's attorney. Certainly, one who files a lawsuit can be expected to know more about it than some third party.[4] Moreover, the fact that the state brought the prior actions to the attention of the court should make no difference at all. The question of IFP status is a matter between the court and the requestor. The mere fact that the state alerts the court to the issue (and might benefit from its resolution) should not lead to the placing of any substantial burden upon it.[5]

In sum, the goals and access factors as well as the policies underlying § 1915(g) militate in favor of placing the burden of persuasion on Andrews. More than that, it should be enough for the defendants or the court to point to the fact of prior dismissals and then let the plaintiff explain them, if he can. That is, the dismissals themselves are sufficient evidence to suggest that, at the least, the action was not meritorious and failed to state a claim. The plaintiff should have to demon-

---

[4]By the way, Andrews should not be able to hide behind the claim that because his litigation history is such a gallimaufry (over 60 cases in all), he should not have to remember or explain that history. That is the height of crocodility; he is just the sort of prisoner that Congress had in mind when it passed the PLRA.

[5]In fact, it is difficult to see why the state should even have any burden of production under the circumstances. It aids and is a friend of the court when it brings the information to the court's attention. After all, filing fees are designed to fund court operations; they do not go to the opposing litigants. *See* 28 U.S.C. §§ 1911-1931.

strate the contrary. Thus, I would hold that when the state proffers information *tending to show* that a prisoner has three prior strikes, it is the prisoner's burden to produce sufficient evidence to persuade the court that § 1915(g) does not bar him from IFP status. Moreover, the dismissals themselves *tend to* show just that.

B.  *The Meaning of a Strike*

I also do not agree that a dismissal for filing a clearly improper appeal is not a dismissal on the basis of frivolity. This court, for example, is often barraged with premature appeals by prisoners who refuse to accept the district court's interim rulings — for example, dismissals with leave to amend, which we have definitively stated are not appealable. *See WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136-37 (9th Cir. 1997) (en banc); *see also Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32, 104 L. Ed. 2d 338 (1989); *Tripati v. First Nat'l Bank & Trust*, 821 F.2d 1368, 1370 (9th Cir. 1987). Indeed, as I see it, that sort of a filing is close to the apogee of filings which meet the definition set forth in the majority opinion.

Thus, I concur in the majority opinion, except as to the portions already indicated, as to which I respectfully dissent.