**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ANTOLIN ANDREWS,
　　　　　*Plaintiff-Appellant,*

v.

SANTOS CERVANTES, Appeals
Coordinator; TOM L. CAREY,
Warden; JAMES E. TILTON,*
Director of the California
Department of Corrections and
Rehabilitation; TREVINO, Sergeant;
H. KOSHER, Librarian; THERESA
RICE, Supervisor of Adult
Instruction; M. VALDEZ,
Correctional Officer at CSP
Solano; MILLS, Correctional
Officer at CSP Solano,
　　　　　*Defendants-Appellees.*

No. 04-17459

D.C. No.
CV-03-01218-WBS

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Chief District Judge, Presiding

Argued and Submitted
December 8, 2006—San Francisco, California

Filed June 26, 2007
Amended July 5, 2007

*James E. Tilton is substituted for his predecessor, Ed Alameida, as Director of the California Department of Corrections and Rehabilitation. Fed R. App. P. 43(c)(2).

8005

Before: Dorothy W. Nelson, Robert E. Cowen,** and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

---

**The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

**COUNSEL**

Paul T. Friedman, Morrison & Foerster, LLP, San Francisco, California, and Melissa Ann Jones, Morrison & Foerster, LLP, Sacramento, California, for the plaintiff-appellant.

Megan R. O'Carroll, Deputy Attorney General, Sacramento, California, for defendant-appellee James E. Tilton.

**ORDER**

The Opinion filed on June 26, 2007, is amended as follows: [Slip Opinion at p. 7640]

Replace the words "previously determined not to cause an imminent danger" at the end of footnote 11 with the words "rejected in an earlier case."

**OPINION**

BERZON, Circuit Judge:

Antolin Andrews is a prisoner who has filed several dozen lawsuits in federal court during his confinement. Although he has become as adept as the best attorney at accessing the courthouse clerk's office, his success rate on the merits of his cases is much less enviable. And therein lies Andrews's problem.

Since the 1996 passage of the Prison Litigation Reform Act ("PLRA"), an inmate like Andrews who has filed numerous unsuccessful lawsuits can become ineligible to file additional lawsuits in federal court without paying the ordinary $350 fee upon filing, even if the inmate is indigent. The PLRA provides for such a limitation on filing suit through its rule, nick-named the "three-strikes rule," making *in forma pauperis* ("IFP") status unavailable to prisoners who have "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g); *see also Andrews v. King*, 398 F.3d 1113, 1116 n.1 (9th Cir. 2005) (noting the "three strikes" terminology). When Andrews filed the lawsuit underlying this appeal, the district court found that the three-strikes rule applied to Andrews, refused Andrews's request to proceed IFP, and ordered the case closed.

There is, however, an exception to the PLRA's three-strikes rule, allowing for filing without prepaying the $350 fee when "the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Andrews's complaint alleged a cause of action under 42 U.S.C. § 1983 for cruel and unusual punishment premised on the danger of contracting various communicable diseases. The California Department of Corrections and Rehabilitation ("DCR"), Andrews alleged, had

an ongoing policy of not screening inmates for such diseases and instead housing contagious inmates with others without regard to the risk they pose.

We hold that the district court should have allowed Andrews's lawsuit to proceed IFP because he sufficiently alleged an "imminent danger of serious physical injury." Our holding is quite narrow: We hold only that the district court should have accepted Andrews's lawsuit without demanding an upfront $350 payment based on the allegations appearing on the face of the complaint. We express no opinion on the proper treatment of the complaint once it is docketed — and quite properly so, because the three-strikes rule is a screening device that does not judge the merits of prisoners' lawsuits.

## I.

On June 6, 2003, Andrews filed the pro se complaint underlying this appeal. At that time he was incarcerated at the California State Prison, Solano ("Solano").

As Claims One and Two of the complaint, Andrews alleged that the threat he faced from contagious diseases at Solano violated the Eighth Amendment prohibition against cruel and unusual punishment. Specifically, his complaint asserted that DCR "has no policy in place to screen . . . inmates for contagious diseases upon the reception of . . . inmates into the prison system." This meant, Andrews went on to allege, that during his time at Solano he had been "placed in close proximity with inmates that the institution knew or should have known would or could infect me with disease." Andrews detailed that during the previous six months, he had been housed with five inmates with contagious diseases — two infected with HIV/AIDS, two infected with Hepatitis C, and one infected with Heliobacter pylori. He noted that "[c]urrently, there is an epidemic of hepatitis C at CSP Solano yet there are no steps taken to prevent further spread of the

disease." And he alleged that prison officials failed to act after he raised these health concerns.

The complaint recounted in detail the reason why these contagious inmates posed a danger: The very close quarters in prison cells, the communal toilets, and the fact that inmates, even without permission, use their cellmates' personal hygiene items, including toothbrushes and razors, mean that "it is quite possible," according to Andrews, that communicable diseases can be transferred to non-infected inmates if inmates with communicable diseases are not segregated. Andrews also alleged that Solano's staff doctor had confirmed these means of transmission. In support of his assertions Andrews noted that he had contracted tuberculosis while incarcerated in another California prison in 1987 and likely had contracted some disease while in Solano that caused painful lumps to develop on his thighs. Based on his ongoing proximity to diseased inmates and the possibility of transmission between cellmates, Andrews alleged that "I have been subjected to harm in the past and I will be subjected to harm in the future." Andrews asked for injunctive relief requiring DCR "to test every inmate currently in the Department for contagious diseases and to house and treat each inmate for the infections that they are found to have appropriately" or, alternatively, requiring that Andrews be placed in a single-inmate cell.

Andrews's complaint also contained five causes of action not related to infectious diseases. These alleged causes of action raised various due process, equal protection, and First Amendment challenges to the operation of Solano's grievance system and to its practices for assigning employment to inmates.

When he filed his complaint Andrews sought leave to proceed IFP. A magistrate judge found that Andrews had filed while incarcerated three lawsuits later dismissed for failing to state a claim, and that the PLRA's three-strikes rule barred

Andrews from proceeding IFP unless he was "under imminent danger of serious physical injury." The magistrate judge granted Andrews leave to make such a showing.

Andrews responded by noting that he had shared cells with thirty-six inmates while at Solano and knew that six of those inmates had contagious diseases. "As a result," Andrews asserted, "I have come into contact with hepatitis. . . . [N]ow my body is said to have contacted the hepatitis disease, a disease that is incurable and will be with me for life." His response also reiterated the complaint's allegations of ongoing risk:

> There is a high probability of future harm since the [DCR] Director still fails to test persons brought into the institutions and still continues to house those persons in cells which have limited air flow, where the inmates housed with them may use personal items without permission to do so and thereby transfer disease.

> I claim that the practice of housing inmates with contagious diseases with those who are well . . . can lead to my being infected by the various diseases that run rampant throughout the Department's institutions.

The magistrate judge found that Andrews failed to meet the "imminent danger" exception because he "does not allege he presently is housed with a contagious prisoner." The magistrate judge therefore recommended that the district court deny Andrews IFP status. Andrews opposed the magistrate judge's finding, specifying that he was housed with a hepatitis-infected inmate at the time he filed the complaint. He protested that his allegations concerning "the lack of testing means that he is subject to be housed with more contagious diseases in the future."

The district court adopted the magistrate judge's recommendation, determining that Andrews could not meet the "imminent danger" exception when he "alleged he already had contracted hepatitis and did not allege he was presently confined with a prisoner with another contagious disease." The district court judge therefore denied Andrews's application to proceed IFP and directed the clerk to close the case.

After Andrews timely filed his notice of appeal, we granted his request to proceed IFP on appeal and appointed pro bono appellate counsel. While the appeal has been pending, Andrews has been transferred to a federal immigration detention facility in Tacoma, Washington. His appellate brief asserts that he "has been advised by the [DCR] that he remains in the 'custody' of the [DCR]; . . . he is informed and believes that when he is released from the Tacoma facility, he will be move to a [DCR] facility."

## II.

[1] Plaintiffs normally must pay $350 to file a civil complaint in federal district court, 28 U.S.C. § 1914(a), but 28 U.S.C. § 1915(a)(1) allows the district court to waive the fee, for most individuals unable to afford it, by granting IFP status.[1] To address concerns that prisoners proceeding IFP were burdening the federal courts with frivolous lawsuits, the PLRA

---

[1]The statute provides that

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1); *see also Lister v. Dep't of the Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) (explaining that the statute applies to all persons notwithstanding its "prisoner possesses" language, and collecting cases so holding).

altered the IFP provisions for prisoners in an effort to discourage such suits. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) (en banc). Although indigent prisoners are still accorded IFP status if they establish that they meet the prerequisites, § 1915(b) provides that prisoners proceeding IFP must pay the filing fee as funds become available in their prison accounts. Additionally, prisoners who have repeatedly brought unsuccessful suits may entirely be barred from IFP status under the three-strikes rule:

> In no event shall a prisoner bring a civil action . . . under this section [authorizing IFP proceedings] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). At issue in this case is the exception contained in § 1915(g) for prisoners "under imminent danger of serious physical injury."[2]

"The denial of a motion to proceed *IFP* is appealable as a final judgment under 28 U.S.C. § 1291." *Andrews*, 398 F.3d at 1118. We review the district court's interpretation and application of § 1915(g) de novo. *Id.*

---

[2]Because we hold that Andrews could proceed IFP with his entire complaint pursuant to the "imminent danger" exception, we do not address his contention — undecided in this circuit — that the district court improperly treated a suit dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), as a strike under the PLRA. We also have no reason to address Andrews's arguments that the district court procedurally erred in determining that certain prior suits counted as strikes or that the three-strikes rule was unconstitutionally applied to him.

**[2]** This circuit has not previously addressed the "imminent danger" exception to the three-strikes rule, but several other circuits have done so. In examining those decisions, we find general agreement on two pertinent points: Prisoners qualify for the exception based on the alleged conditions at the time the complaint was filed. And qualifying prisoners can file their entire complaint IFP; the exception does not operate on a claim-by-claim basis or apply to only certain types of relief. Because we agree that both determinations accord with the best reading of the statute, we adopt them as well. With these preliminary principles established, we then consider, informed by other circuits' examinations of the provision, whether Andrews's specific complaint satisfies both the "imminent danger" and "serious physical injury" prongs.[3]

## A.

**[3]** The PLRA provides that a prisoner with three strikes cannot use IFP status to "*bring* a civil action . . . unless the prisoner *is* under imminent danger of serious physical injury." 28 U.S.C. § 1915(g) (emphases added). The exception's use of the present tense, combined with its concern only with the initial act of "bring[ing]" the lawsuit, indicates to us that the exception applies if the danger existed at the time the prisoner filed the complaint.[4] *See United States v. Jackson*, 480 F.3d 1014, 1018-19 (9th Cir. 2007) (noting the use of tenses in statutes generally is significant and "one would not refer in

---

[3]There is only scant legislative history regarding the PLRA. None of it refers to the three-strikes exception. *See* B. Patrick Costello, Jr., *"Imminent Danger" Within 28 U.S.C. § 1915(g) of the Prison Litigation Reform Act: Are Congress and Courts Being Realistic?*, 29 J. LEGIS. 1, 5 (2002).

[4]The statute also prevents prisoners with three strikes from using IFP status to "appeal a judgment." A motions panel of this court granted IFP status to Andrews for the appeal, and the state has not challenged his right to appeal IFP. We therefore do not determine the time at which imminent danger must exist for the purposes of an IFP appeal. Moreover, the record reflects no change in the danger Andrews faced between the time he filed his complaint and the time he filed his appeal.

the present tense to something that had already happened" (citing The Dictionary Act, 1 U.S.C. § 1)). In other words, the availability of the exception turns on the conditions a prisoner faced at the time the complaint was filed, not at some earlier or later time. Andrews's removal from the California prison system after filing the complaint is therefore irrelevant to our § 1915(g) analysis.[5]

[4] The six other circuits that have addressed the issue have all concluded, similarly, that district courts should determine whether there is an "imminent danger of serious physical injury" on the basis of the conditions at the time the complaint was filed. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002); *Abdul-Akbar*, 239 F.3d at 312;[6] *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999); *Baños v. O'Guin*, 144 F.3d 883, 884 (5th Cir. 1998) (per curiam); *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) (per curiam). The Seventh Circuit has rejected the argument that a prisoner's transfer out of a prison after the complaint was filed affected his ability to invoke the exception. *See Ciarpaglini*, 352 F.3d at 330. Although no other circuit has specifically addressed post-complaint changes in circumstance, all maintain a singular focus on the facts alleged in the complaint in deciding

---

[5]This conclusion does not foreclose the possibility that Andrews's move from Solano mooted his request for injunctive relief. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]"). Andrews's complaint requested damages from prison officials for violating his due process, equal protection, and First Amendment rights, however, so the case as a whole is not moot. *See id.* We therefore do not consider whether Andrews had a "reasonable expectation of returning to" a prison run by DCR.

[6]*Abdul-Akbar* overruled the Third Circuit's holding in *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997), that the dispositive question was the "danger faced by the inmate at the time of the alleged incident, and not at the time the complaint was filed," *id.* at 86. *Gibbs* offered no analysis of the statutory language to support its result.

whether a prisoner faced the requisite harm. *See, e.g.*, *Ibrahim v. Dist. of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006) ("In determining whether he qualifies [for the "imminent danger" exception], we look to the complaint . . . ." ); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) ("[T]he issue [under § 1915(g)] is whether his complaint, as a whole, alleges imminent danger of serious physical injury."). We are in agreement with all of these cases in holding that it is the circumstances at the time of the filing of the complaint that matters for purposes of the "imminent danger" exception to § 1915(g).

**[5]** We further conclude, again in accord with the circuits that have decided the issue, that once a prisoner satisfies the exception to the three-strikes rule and otherwise qualifies for IFP status, the district court must docket the entire complaint and resolve all of its claims, without requiring the upfront payment of the filing fee. Consequently, although a number of the claims in Andrews's suit unquestionably did not allege an imminent danger of serious physical injury, the complaint as a whole should have proceeded IFP if his allegations about the danger he faces from contagious diseases met the requisite standard.

The PLRA specifies that a prisoner with three strikes cannot use IFP status to "bring *a civil action* . . . if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought *an action* . . . that was dismissed on grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g) (emphases added). As the Supreme Court has recently observed, in the course of interpreting another PLRA provision, "statutory references to an 'action' have not typically been read to mean that every claim included in the action must meet the pertinent requirement before the 'action' may proceed." *Jones v. Bock*, 127 S. Ct. 910, 924 (2007).

Nor would such a reading make sense with regard to § 1915(g). We have previously held that in determining whether a prisoner has accumulated three strikes because they have "on 3 or more occasions . . . brought *an action* . . . that was dismissed" on the specified grounds, 28 U.S.C. § 1915(g) (emphasis added), the district court must "determine that a prior *case* was dismissed because it was 'frivolous, malicious or fail[ed] to state a claim,' " *Andrews*, 398 F.3d at 1120 (emphasis added) (quoting § 1915(g)) (alteration in original). In other words, we already have determined that one use of the term "action" in § 1915(g) refers to a case as a whole rather than just its individual claims. It therefore would be highly anomalous to read the second use of "action" in the same subsection any differently, and we will not do so. *See Jones*, 127 S. Ct. at 925 (refusing to read two uses of the word "action" in another subsection of the PLRA in an incongruous manner).

Moreover, allowing the whole suit to be filed if the "imminent danger" exception applies to any part of it makes practical sense. The fee pertains to the action as a whole, not to subparts of it; there is no provision for prorating a filing fee. So the only way the exception could fulfill its purpose is for it to apply to the suit as a whole.

The Third Circuit has reached a like conclusion in a similar case:

> After the threshold issue of imminent danger is resolved . . . , the focus of the litigation may generally shift to other issues. Satisfaction of the "imminent danger" element does no more than permit the complainant to proceed with his or her cause of action without pre-payment of the filing fee in full. Once the fee barrier has been overcome, the merits of the cause of action itself are then available for consideration and decision.

For example, if the substance of the complaint deals with claims unrelated to the issue of imminent danger . . . , once the § 1915(g) threshold has been met, the "imminent danger" issue may be totally irrelevant to the adjudication of the merits of the alleged constitutional violations.

*Gibbs v. Roman*, 116 F.3d 83, 87 n.7 (3d Cir. 1997), *overruled en banc on other grounds by Abdul-Akbar*, 239 F.3d at 312. The rule in the Seventh Circuit is the same, *see Ciarpaglini*, 352 F.3d at 330 ("[Section 1915(g)] only limits when frequent filers can proceed IFP, and says nothing about limiting the substance of their claims."), and the D.C. Circuit has so assumed without expressly addressing the issue, *Ibrahim*, 463 F.3d at 5-8 (reversing, on all but one claim, the dismissal of a prisoner's complaint that "allege[d] a smorgasbord of wrongdoings by the defendants," including due process and First Amendment violations, after concluding that one claim met the imminent danger of serious physical injury standard).**[7]**

**[6]** In sum, if Andrews's Eighth Amendment claim alleged that he faced an "imminent danger" at the time he filed the complaint, § 1915(g) allows his entire lawsuit to proceed IFP even if Andrews otherwise met the three-strikes criteria.

## B.

We now turn to the question whether Andrews did sufficiently state an imminent danger of serious physical injury in the portion of his complaint concerning the alleged risk to his health arising from DCR's inmate health screening policy.

---

**[7]**Our holding also is consistent with the Seventh Circuit's general interpretation of § 1915(a) before the enactment of the PLRA. *See Aiello v. Kingston*, 947 F.2d 834, 836 (7th Cir. 1991) ("When . . . the complaint states multiple theories of relief against the same defendants, . . . [t]he district judge must grant or deny leave to proceed without prepayment of costs with respect to all claims in such a complaint.").

Andrews filed his complaint pro se, so in making this determination we must liberally construe his allegations. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) ("We construe the complaint liberally because it was drafted by a pro se plaintiff."); *see also Brown*, 387 F.3d at 1350 (construing the allegations in a pro se complaint liberally to determine whether the § 1915(g) danger exception was satisfied).

**[7]** We stress at the outset that § 1915(g) concerns only a threshold procedural question — whether the filing fee must be paid upfront or later. Separate PLRA provisions are directed at screening out meritless suits early on. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). As the Seventh Circuit explained, the limited office of § 1915(g) indicates that we should not make an overly detailed inquiry into whether the allegations qualify for the exception:

> The State says [the prisoner's] allegations are not serious enough. However, § 1915(g) is not a vehicle for determining the merits of a claim. To follow the State's logic, a district court would not just need to determine whether a prisoner is alleging some type of ongoing or imminent harm. It would also need to fine-tune what is "serious enough" to qualify for the exception. Is being denied heart medication? What about a cholesterol-lowering drug? How frequently do beatings need to occur before they are serious? This would result in a complicated set of rules about what conditions are serious enough, all for a simple statutory provision governing when a prisoner must pay the filing fee for his claim. This is not required
> . . . .

*Ciarpaglini*, 352 F.3d at 331. Instead, the exception applies if the complaint makes a plausible allegation that the prisoner faced "imminent danger of serious physical injury" at the time of filing.

**[8]** Andrews's allegation that he is at risk of contracting HIV or hepatitis C, if true, more than plausibly raises the specter of serious physical injury. These diseases quite obviously cause serious health problems, and can result in death. *See Ibrahim*, 463 F.3d at 7 ("[W]e have no difficulty concluding that a chronic disease that could result in serious harm or even death constitutes 'serious physical injury.' ").**[8]**

**[9]** Whether Andrews's complaint demonstrates that he satisfied the "imminent danger" prong of the exception *at the time the complaint was filed* is a closer question. The district court held that Andrews was not in "imminent danger of serious physical injury" at the time he filed his complaint because "he already had contracted hepatitis and did not allege he was presently confined with a prisoner with another contagious disease." The district court thus in essence required that for the exception to apply, the prisoner must be directly exposed to the danger at the precise time he filed the complaint.**[9]**

**[10]** The common definition of "imminent," however, does not refer only to events that are already taking place, but to those events "ready to take place" or "hanging threateningly over one's head." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 580 (10th ed. 1999); *see also Ciarpaglini*, 352 F.3d at 330 ("[T]he harm must be imminent *or* occurring at the time

---

**[8]**The state disputes Andrews's assertions about the seriousness of Heliobacter pylori. The allegations concerning HIV and hepatitis C suffice in themselves, so we do not need to decide whether allegations of exposure to Heliobacter pylori alone would be enough to trigger the exception. *See Brown*, 387 F.3d at 1350 (dismissing the state's argument that the plaintiff's allegations about skin problems were not serious when he also complained about complications from HIV and hepatitis).

**[9]**Even under the standard it applied, the district court's conclusion may have been erroneous. Andrews specified in supplemental filings with the district court that his cellmate was hepatitis-positive at the time of filing, and his complaint can be read to state — although it is less than clear in this regard — that he had only come into contact with, not already contracted, the disease.

the complaint is filed." (emphasis added)); *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (noting a prisoner could invoke the § 1915(g) exception based upon "specific fact allegations of ongoing serious physical injury, *or* of a pattern of misconduct evidencing the likelihood of imminent serious physical injury" (emphasis added)). Adopting the district court's standard would not only violate the common meaning of "imminent," but would also create an untenable Catch 22, in which filings would always be either too early or too late to invoke the provision. *See Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002) ("If [the § 1915(g) exception is] limited to situations in which, say, a beating is ongoing, no prisoner will find solace; once the beating starts, it is too late to avoid the physical injury; and once the beating is over the prisoner is no longer in 'imminent danger' and so could not use this proviso to seek damages . . . . Reading the imminent-danger language this way would make it chimerical, a cruel joke on prisoners.").

**[11]** Instead, we believe that requiring a prisoner to "allege[ ] an ongoing danger" — the standard adopted by the Eighth Circuit — is the most sensible way to interpret the imminency requirement. *Ashley*, 147 F.3d at 717. Applying that standard, *Ashley* held that a prisoner's allegations that prison officials engaged in an ongoing pattern of placing him near a group of inmates — his enemies — with a history of causing serious injuries — demonstrated by past physical assaults — satisfied the "imminent danger" requirement without considering whether he was housed next to an enemy prisoner at the very moment he filed suit. *Id.* Similarly, Andrews alleged that DCR policy created an ongoing pattern of placing him in close proximity to inmates — those with serious contagious diseases — with a history of causing serious injuries — demonstrated by Andrews's tuberculosis infection during a previous period in DCR custody and by an ongoing hepatitis outbreak at Solano.

**[12]** We therefore hold that Andrews satisfied the "immi-nent danger" standard.[10] In other words, a prisoner who alleges that prison officials continue with a practice that has injured him or others similarly situated in the past will satisfy the "ongoing danger" standard and meet the imminence prong of the three-strikes exception. *See Ciarpaglini*, 352 F.3d at 330-31 (finding a prisoner's allegations met the "imminent danger" requirement when the prison's decision to stop pro-viding medications had caused a number of physical ail-ments); *McAlphin v. Toney*, 281 F.3d 709, 710 (8th Cir. 2002) (finding allegations about a prison's failure to provide for a tooth extraction sufficient to meet the "imminent danger" requirement, when delay had previously allowed an infection to spread in the inmate's mouth).[11]

---

[10]Because Andrews alleged that he was at risk of contracting serious diseases other than hepatitis, in particular HIV/AIDS, it would not matter if he was already infected by hepatitis at the time he filed the complaint. *See supra* note 9.

[11]We are not suggesting that a prisoner must always allege that the con-tinuing practice has caused past harms in order to constitute an "ongoing danger." Such a look to history is simply one way a prisoner can make the dispositive showing that the ongoing practice, if continued, "evidenc[es] the likelihood of serious physical injury" at the moment the complaint was filed. *Martin*, 319 F.3d at 1050. The harm from some ongoing practices may be sufficiently obvious without showing a past injury resulting from it. *See Brown*, 387 F.3d at 1350 (finding the alleged denial of medication to treat HIV and hepatitis constituted "imminent danger" because of "the alleged danger of more serious afflictions if he is not treated"); *Gibbs v. Cross*, 160 F.3d 962, 965-66 (3d Cir. 1998) (finding the "imminent dan-ger" requirement satisfied when an inmate alleged he was "forced to breathe particles of dust and lint which were continuously being dispersed into his cell through the ventilation system," because "it is common knowledge that improper ventilation and the inhalation of dust and lint particles can cause disease").

On the other hand, assertions of imminent danger of less obviously inju-rious practices may be rejected as overly speculative or fanciful, when they are supported by implausible or untrue allegations that the ongoing practice has produced past harm. *See Ciarpaglini*, 352 F.3d at 331 ("Courts . . . deny leave to proceed IFP when a prisoner's claims of immi-

**[13]** The prison officials maintain that despite Andrews's allegation of an ongoing practice and past injuries due to the practice, he did not allege "imminent danger" because HIV and hepatitis C are not acquired through everyday contact.[12] As we noted earlier, § 1915(g) merely establishes a threshold procedural question and does not ask the court to evaluate the merits of the suit. The prison officials' argument about the nature of HIV and hepatitis C may effectively rebut the merits of Andrews's allegations that DCR's ongoing practice of not screening and segregating inmates with HIV and hepatitis C threatens his health. At this threshold stage however — and given that Andrews does allege that cellmates engage without permission in practices that could involve blood contact and that Solano has had an outbreak of hepatitis C — Andrews's complaint adequately alleged "imminent danger" for § 1915(g) purposes. Andrews should therefore have been granted IFP status to proceed with his entire complaint.

REVERSED and REMANDED.

---

nent danger are conclusory or ridiculous."); *Martin*, 319 F.3d at 1048 (refusing to find an "imminent danger" based on "conclusory assertions that defendants were trying to kill [the inmate] by forcing him to work in extreme [weather] conditions despite his blood pressure condition"); *see also Andrews*, 398 F.3d at 1118-20 (allowing defendants to prove that § 1915(g) renders a prisoner-plaintiff ineligible for IFP status). And normal preclusion principles will prevent a prisoner from avoiding the three-strike rule based on allegations rejected in an earlier case.

[12]The Centers for Disease Control and Prevention publications that the prison officials cite for this proposition specifically warn against sharing razors or toothbrushes in order to prevent the spread of HIV and hepatitis C. Andrews's complaint details that just such sharing can occur between cellmates, even without permission.