*Shepherd v. Comm'r Annucci*

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2018

No. 17-2261

EON SHEPHERD,
*Plaintiff-Appellant,*

*v.*

COMMISSIONER ANNUCCI, SUPERINTENDENT ROCK, SUPERINTENDENT SHEAHAN, SUPERINTENDENT LA VALLEY, SUPERINTENDENT PEREZ, SUPERINTENDENT SMITH, DSS MALLY, DSP ANDREWS, DSP LIRA, DSP JONES, CAPTAIN CALEVERIE, CHERYL MORRIS, DR. KOENIGSMANN, DR. LEE, DR. TRABOUT, DR. HAIMES, NA BAINSTER, NA JANSEN, NP SALOTI, DSP JONES, CORRECTIONAL OFFICER MANDIGO, RN TUNG NGYER, DEACON BASHAW, CORRECTIONAL OFFICER HUSCH, SERGEANT TUCKER, SERGEANT WILKIE, CORRECTIONAL OFFICER EKWEREKWU, DIRECTOR OF CLASSIFICATION AND MOVEMENT FOR THE NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION,

*Defendants-Appellees,*

JANE/JOHN DOES, *ET AL.,*

*Defendants.*

On Appeal from the United States District Court

for the Western District of New York

SUBMITTED: DECEMBER 3, 2018
DECIDED: APRIL 15, 2019

Before:     CABRANES, DRONEY, SULLIVAN, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the Western District of New York (Larimer, *J.*), dismissing Plaintiff-Appellant's complaint with prejudice as a sanction for misrepresenting his litigation history. Plaintiff-Appellant argues that the district court abused its discretion by dismissing his complaint as a sanction, and that the district court erred by considering materials outside the complaint when evaluating whether he qualified for the "imminent-danger" exception to the Prison Litigation Reform Act's "three-strikes" rule. We hold that a district court may conduct a limited evidentiary inquiry into a litigant's assertion of imminent danger. Because we find no abuse of discretion in the district court's dismissal of this case as a sanction, we affirm.

Michael Starr and Sheila (Qian) Shen, Holland & Knight LLP, New York, NY *for Plaintiff-Appellant*.

Andrea Oser, Deputy Solicitor General, and Kate H. Nepveu, Assistant Solicitor General, *for* Barbara Underwood, Attorney General, State of New York, *for Defendants-Appellees*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Plaintiff-Appellant Eon Shepherd appeals from the judgment of the United States District Court for the Western District of New York (Larimer, *J.*), which

dismissed his *pro se* complaint with prejudice as a sanction for misrepresenting his litigation history. The district court also determined that Shepherd was barred from proceeding *in forma pauperis* because he had accumulated three strikes under 28 U.S.C. § 1915(g), and was not in "imminent danger of serious physical injury," *id*. On appeal, Shepherd argues that the district court abused its discretion by dismissing his complaint as a sanction. Shepherd also argues that the district court erred by considering materials outside the complaint when evaluating whether he qualified for the imminent-danger exception to the three-strikes bar. We conclude that district courts may conduct limited inquiries into whether a litigant's fear of imminent danger under Section 1915(g) is plausible. Moreover, because we find no abuse of discretion in the district court's dismissal of this case as a sanction, we AFFIRM.

## I. BACKGROUND

Plaintiff-Appellant Eon Shepherd is an inmate at Five Points Correctional Facility ("Five Points") in Romulus, New York. On June 1, 2015, Shepherd filed suit in the Southern District of New York against the New York Department of Corrections and Community Supervision, 28 named defendants, and various John and Jane Does (collectively, "Defendants"), setting forth 33 causes of actions under various federal statutes. Shepherd also filed a request to proceed *in forma pauperis*

3

(IFP) – a status which allows a prisoner-litigant to file a lawsuit without pre-paying the full filing fees. *See* 28 U.S.C. § 1915(a)(1). However, under what is known as the "three-strikes" provision, an incarcerated prisoner is prohibited from proceeding IFP if he has commenced three prior lawsuits that have been dismissed outright. *See id.* § 1915(g). In his complaint, Shepherd stated that he had filed seven[1] lawsuits previously, but asserted that none qualified as strikes.

As to his conditions of confinement, Shepherd alleged the staff at Five Points failed to accommodate his disability – severe back pain and spasms that prevented him from walking long distances – by refusing to house him close to the clinic, the package room and the visiting area, although he conceded that the staff did place him close to the law library, religious services, and the gym. Shepherd also claimed that the medical staff refused to provide him treatment for his back pain and other maladies. Finally, Shepherd asserted that he was placed on medical "keeplock" (i.e., bed rest) against his wishes, and that this caused him further pain and muscle atrophy.

The Southern District of New York (Preska, *J.*) initially granted Shepherd's application to proceed IFP. However, one month later, Judge Preska *sua sponte*

---

[1] While Shepherd's original complaint listed eight "previous" lawsuits, it indicated that one of the listed lawsuits was still pending.

issued an order to show cause why Shepherd's IFP status should not be revoked, citing three prior IFP cases that Shepherd had brought, all of which qualified as "strikes" and would ordinarily bar Shepherd from proceeding IFP. *See* 28 U.S.C. § 1915(g). Shepherd responded, arguing that his IFP status should not be revoked because he was in "imminent danger of serious physical injury," which is an exception to the three-strikes rule. *See id.* The case was subsequently transferred to the Western District of New York (Arcara, *J.*),[2] which found that Shepherd could proceed IFP, as the complaint and his response to the order to show cause provisionally demonstrated that he was in imminent danger of serious physical injury.

After being served, Defendants moved to dismiss the complaint pursuant to the "inherent authority of the Court," arguing that Shepherd materially misled the court by deliberately omitting from the complaint his prior "strikes." Defendants noted that Shepherd had previously filed ten federal lawsuits – not seven, as he indicated in his complaint – and that the only cases he omitted were all cases that would qualify as "strikes." Defendants also moved to revoke Shepherd's IFP status, arguing that he was not in "imminent danger of serious physical injury."

---

[2] The case was ultimately transferred to Judge Larimer in the Western District of New York.

5

In support of their motion, Defendants attached sworn declarations from Shepherd's doctors, Dr. Michelle Belgard and Dr. Marshall Trabout, and Shepherd's medical records. The district court directed Shepherd to respond to Defendants' motion. Shepherd responded, attaching two sworn affirmations and one sworn declaration, as well as a variety of exhibits.

On July 6, 2017, the district court dismissed Shepherd's complaint. First, the court reasoned that Shepherd had deliberately misled the court by failing to disclose his three prior "strikes," especially in light of Shepherd's familiarity with the court system and long litigation history. Second, as to his IFP status, the court held that Shepherd's fear of "imminent danger of serious physical injury" was "without foundation," and that there was "no indication" that he was in such danger. Dist. Ct. Doc. No. 40 at 6. Although the order did not expressly state whether dismissal was with prejudice, the court entered judgment for Defendants.

Shepherd timely filed a notice of appeal.

## II. LEGAL STANDARD

We review a district court's denial of IFP status pursuant to 28 U.S.C. § 1915 *de novo*. *See Polanco v. Hopkins*, 510 F.3d 152, 155 (2d Cir. 2007). We review a sanction of dismissal with prejudice for abuse of discretion. *Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014).

6

## III. DISCUSSION

Shepherd principally advances two arguments. First, as to the revocation of his IFP status, Shepherd argues that the district court erred by considering materials beyond the complaint in determining whether he qualified for the imminent-danger exception to the three-strikes rule. Second, Shepherd avers that the district court failed to give him adequate notice that it was contemplating dismissing his complaint with prejudice and that the district court failed to consider lesser sanctions than dismissal. Although we need not strictly reach the IFP issue if the sanction of dismissal was proper – as the imminent-danger exception under Section 1915(g) bears only on whether Shepherd would be required to pre-pay the filing fee – we nonetheless provide clarity to the district courts as to the appropriateness of holding an evidentiary hearing when a provisional determination of imminent danger is challenged.

### A. Imminent-Danger Exception

Adopted in 1996, the Prison Litigation Reform Act (PLRA) made a series of amendments to 28 U.S.C. § 1915, which is the statute that governs IFP status for incarcerated individuals. *See Leonard v. Lacy*, 88 F.3d 181, 182–83 (2d Cir. 1996). Under the PLRA, prisoner-litigants granted IFP status "must pay the full amount of the filing fee to the extent they can afford to, as measured by the funds in their

prison accounts." *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010). "The

fees are paid through periodic debits from the plaintiff's prison account, which are

forwarded to the court by the custodial agency." *Id.* Even if a prisoner has no

money available, he can still proceed IFP. *See* 28 U.S.C. § 1915(b)(4).

However, the PLRA restricts the availability of IFP status for frequent filers

through the "three-strikes" rule.[3] 28 U.S.C. § 1915(g). This rule prohibits prisoner-

litigants from bringing further actions or appeals IFP if they have brought at least

three prior actions that were dismissed because they were "frivolous, malicious,

or fail[ed] to state a claim upon which relief [could] be granted." *Id.*; *see also Harris*,

607 F.3d at 20.[4]

But the three-strikes rule itself contains an exception: prisoners are

permitted to file a lawsuit IFP – even if they have accumulated three strikes – if

---

[3] The three-strikes rule provides:

> In no event shall a prisoner bring a civil action or appeal a judgment
> in a civil action or proceeding under this section if the prisoner has,
> on 3 or more prior occasions, while incarcerated or detained in any
> facility, brought an action or appeal in a court of the United States
> that was dismissed on the grounds that it is frivolous, malicious, or
> fails to state a claim upon which relief may be granted, unless the
> prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

[4] Of course, a prisoner-litigant barred from filing IFP by the three-strikes rule is not prevented
from filing a lawsuit – he must simply pre-pay the filing fee.

they are "under imminent danger of serious physical injury." *Id*. This "imminent-danger" exception is a "safety valve" that exists to "prevent impending harms." *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002).

Shepherd argues that the district court erred by considering materials outside the complaint when evaluating whether Shepherd qualified for the imminent-danger exception to the three-strikes rule.

### 1. Consideration of Facts Outside the Complaint

We have not yet stated whether a district court may consider materials outside the complaint (such as sworn submissions) or hold a hearing when a defendant challenges a prisoner's claim of imminent danger. In *Chavis v. Chappius*, we noted that courts "should not make an overly detailed inquiry into whether [a prisoner's] allegations [of imminent danger of serious physical injury] qualify for the exception," because the three-strikes rule "concerns only a threshold procedural question." 618 F.3d 162, 169 (2d Cir. 2010) (internal quotations omitted). Nonetheless, in *Chavis*, we affirmed that denying leave to proceed IFP is warranted "if the complainant's 'claims of imminent danger are conclusory or ridiculous.'" *Id*. at 170 (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)).

9

All of our sister circuits to have confronted this question have held that district courts – upon challenge by a defendant – may conduct a narrow evidentiary inquiry into the prisoner-litigant's fear of imminent danger. *See Smith v. Wang*, 452 F. App'x 292, 293 (4th Cir. 2011); *Taylor v. Watkins*, 623 F.3d 483, 485–86 (7th Cir. 2010); *Fuller v. Myers*, 123 F. App'x 365, 368 (10th Cir. 2005); *Gibbs v. Roman*, 116 F.3d 83, 86–87 (3d Cir. 1997), *overruled on other grounds by Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) (en banc). Additionally, district courts throughout this circuit have uniformly held that courts may consider materials outside of the complaint in conducting this limited inquiry. *See, e.g., Abreu v. Brown*, 317 F. Supp. 3d 702, 706–07 (W.D.N.Y. 2018); *Tafari v. Baker*, No. 6:16-cv-06472, 2017 WL 1406274, at *2 (W.D.N.Y. Apr. 20, 2017); *Abreu v. Lira*, No. 9:12-cv-1385, 2014 WL 4966911, at *7 (N.D.N.Y. Sept. 30, 2014) (adopting report and recommendation).

We agree that courts may reexamine a provisional determination that a complainant is in "imminent danger of serious physical injury" when, after being served with the complaint, a defendant challenges that determination. Congress adopted the PLRA with the "principal purpose" of "deterring frivolous prisoner lawsuits and appeals." *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997). Allowing

10

courts to conduct a limited probe into the plausibility of a prisoner-litigant's claim of imminent danger accords with the PLRA's aims. Moreover, courts have long permitted evidentiary submissions at the pleading stage in a variety of different circumstances. For instance, in resolving a motion to dismiss for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). So too for a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), where district courts have "considerable procedural leeway," which includes "permit[ting] discovery in aid of the motion" or conducting "an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). This is also true for a motion to dismiss under Rule 12(b)(2)'s neighbor, Rule 12(b)(3), in which we allow parties to submit affidavits to demonstrate lack of venue. *See, e.g.*, *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

Affording district courts the latitude to conduct a limited inquiry is crucial when a defendant challenges a provisional determination that a prisoner is in imminent danger of serious physical injury. Holding otherwise would allow

11

prisoner-litigants to continue proceeding IFP where an assertion of imminent danger is made – even if defendants had "incontrovertible proof that rebutted those allegations." *Taylor*, 623 F.3d at 485. Such a rigid application would erode the efficacy of the PLRA's three-strikes rule, by allowing "easy evasion" of the rule if the litigant uttered the right words. *Id*. It would also contradict this Court's acknowledgment that district courts need not accept "conclusory" or "ridiculous" assertions of imminent danger. *Chavis*, 618 F.3d at 170. And it would stand in marked contrast to our approach with other gate-shuttering mechanisms, such as motions to dismiss for lack of subject-matter jurisdiction, personal jurisdiction, and venue.

The Ninth Circuit's decision in *Andrews v. Cervantes*, 493 F.3d 1047 (9th Cir. 2007), is not to the contrary. Like *Chavis*, *Andrews* reaffirmed that, while courts are permitted to probe the plausibility of an allegation of imminent danger, they should not "make an overly detailed inquiry into whether the allegations qualify for the exception." 493 F.3d at 1055. Nothing in *Andrews* purports to say, however, that defendants cannot mount a limited factual challenge to a district court's provisional determination that a prisoner satisfies the imminent-danger exception,

12

or that district courts' hands are tied in resolving this conflict. *Andrews* only cautions – and we agree – that any such inquiry should be narrow.

Of course, a narrow evidentiary challenge to a provisional determination that a prisoner is in imminent danger of serious physical injury should not metastasize into "a full-scale merits review." *Taylor*, 623 F.3d at 486. Because any such inquiry concerns only a "threshold procedural question," *Chavis*, 618 F.3d at 169, resolving a challenge to the imminent-danger exception "does no more than permit the complainant to proceed with his or her cause of action [with or] without pre–payment of the filing fee in full," *Gibbs*, 116 F.3d at 87 n.7.

## 2. Application to Shepherd's Case

The district court did not err in its conclusion that Shepherd's claim of imminent danger was "without foundation." Dist. Ct. Doc. No. 40 at 6. Shepherd asserted below that he was in imminent danger of serious physical injury because (1) he "suffered numerous falls when made to walk long distances," (2) doctors at the prison "refuse[d] to issue pain medication that [would] offer [him] relief," and (3) his muscles atrophied as a result of being "confined to his cell 24 hours a day." Dist Ct. Doc. No. 7.

Dr. Belgard explained in a sworn declaration that, while Shepherd does have chronic back pain, he has both wheelchair access and ambulatory aids – such as a cane – to "ensure he does not fall when walking." Dist. Ct. Doc. No. 27-1 ¶ 12. Dr. Trabout similarly noted that Shepherd has access to a variety of walking aids. According to Dr. Trabout, Shepherd simply "did not want to use his ambulatory aids or wheelchair," as he alleged that they "caused him discomfort." Dist. Ct. Doc. No. 27-2 ¶ 10.

As to Shepherd's allegation that doctors refused to prescribe him pain medication, Dr. Belgard stated that she did, in fact, prescribe Shepherd pain medication, "although he . . . frequently refused to take [it]." Dist. Ct. Doc. No. 27-1 ¶ 13. Indeed, Shepherd was prescribed Motrin, which he refused to take on the basis that it caused stomach irritation. Then, when Dr. Belgard prescribed Prilosec (which would address any stomach irritation), Shepherd still refused to take his medication. Shepherd even rebuffed Dr. Belgard's third attempt to prescribe a medication, Mobic, which would have "significantly reduced if not eliminated entirely" his stomach irritation. *Id*. ¶¶ 16, 17.

Finally, Shepherd's contention that his muscles atrophied as a result of 24-hour confinement was shown to be "ridiculous." *Chavis*, 618 F.3d at 170. As Dr.

Trabout explained, Shepherd was kept in "medical keeplock" – medically ordered bed-rest – at his own request. Specifically, Shepherd said that his knee and back pain "made it difficult to walk to the messhall for food." Dist. Ct. Doc. No. 27-2 ¶ 9. He then complained that his cell was too far from the law library. But as Dr. Trabout noted, Shepherd did not suffer and was not at "imminent" risk of suffering from muscular atrophy for at least two reasons. First, he had access to medical services at any time, and would have been treated promptly for any signs of muscular degeneration. Second, Shepherd had an hour of recreation time each day, during which he could perform any number of exercises – including walking – to prevent or counter muscular atrophy.

In response to the declarations of his doctors and the medical records cited therein, Shepherd offers a hodgepodge of contradictory excuses that further undermine his contention that he was in imminent danger of serious physical injury. For example, he contends that he wouldn't use his wheelchair because it exacerbated his lower back pain, and that using a cane didn't stop him from falling. Shepherd also insists he never requested medical keeplock – which might help *avoid* this pain – while at the same time acknowledging that he *requested* a placement where he would not have to "walk long distances." Additionally,

Shepherd essentially concedes that he refused to take the medications prescribed to him, but only states that these medicines were, based on past experience, "ineffective." Shepherd also states that he was in such extreme pain – he couldn't "move out of bed at times" – that he was unable to exercise or otherwise stave off atrophy.

The evidentiary submissions showed Shepherd's explanation for why he was in imminent danger to be both circular and completely conclusory – indeed, as the district court concluded, "without foundation." The district court did not therefore err in revoking his IFP status.

## B. Notice of Possible Sanctions

Shepherd also argues that the district court erred procedurally by not giving him adequate notice that his complaint could be dismissed – and judgment entered for Defendants – as a sanction for furnishing false statements to the court by deliberately omitting "strike" cases from his complaint.

"A court has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995). "At a minimum," sanctions should

not be imposed without adequate notice and an opportunity to be heard. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999).

Shepherd unquestionably received adequate notice, and had an opportunity to be heard, before the district court dismissed his action. Defendants asked the district court to dismiss Shepherd's complaint as a sanction for misleading the court as to his litigation history. The district court – in ordering Shepherd to respond – stated bluntly that "the claims plaintiff asserts in his complaint may be dismissed without a trial if he does not respond to this motion." Dist. Ct. Doc. No. 30. Indeed, Shepherd's response demonstrates that he was well aware of the possible repercussions. Not only did his response attempt to articulate why the omission of the three prior strikes was not misleading, but it also endeavored to explain why the court should not dismiss his complaint. Especially given Shepherd's long familiarity with the court system, it is clear that Shepherd had adequate notice of the possibility of dismissal with prejudice.

## C. Consideration of Lesser Sanctions

Finally, Shepherd contends that the district court improperly failed to consider a lesser sanction than dismissal. We have repeatedly stated that dismissal is a harsh sanction that requires a district court to at least consider lesser remedial

17

measures before imposing that sanction. *See, e.g., Selletti v. Carey*, 173 F.3d 104, 111 (2d Cir. 1999) (explaining that before a district court dismisses an action for failure to comply with a court order it must consider, among other things, "a sanction less drastic than dismissal"); *Dodson v. Runyon*, 86 F.3d 37, 39 (2d Cir. 1996) ("The remedy [of dismissal] is pungent, rarely used, and conclusive. A district judge should employ it only when he is sure of the impotence of lesser sanctions." (internal quotation marks omitted)). Failure to consider a lesser sanction than dismissal is generally an abuse of discretion. *See In re Harris*, 464 F.3d 263, 272 (2d Cir. 2006) ("Dismissing the [case] without determining whether a lesser sanction would have been appropriate . . . was an abuse of discretion.").

However, where, as here, a litigant acted in bad faith, has significant experience with the workings of the court, and has an extensive history with the IFP statute, we have affirmed dismissal as a sanction even when the district court did not explicitly consider a lesser sanction. *See Vann v. Comm'r of N.Y. City Dep't of Correction*, 496 F. App'x 113, 116 (2d Cir. 2012) (affirming dismissal with prejudice where prisoner-litigant with "litigation experience and extensive familiarity of the [IFP] process" made false statements and concealed income on IFP application); *see also S. New England Tel. Co. v. Glob NAPs Inc.*, 624 F.3d 123, 148

18

(2d Cir. 2010) (stating that "district courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record"). In the present circumstances, we are satisfied that the district court's sanction of dismissal was not an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.