19-585-pr
*McFadden v. Noeth, et al*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of September, two thousand twenty.

PRESENT:    JOSÉ A. CABRANES,
            BARRINGTON D. PARKER,
            REENA RAGGI,
                        *Circuit Judges.*

---

REGINALD MCFADDEN, AKA REGINALD
GHAFFAR MCFADDEN,

                *Plaintiff-Appellant,*                          19-585-pr

            v.

JOSEPH NOETH, FIRST DEPUTY SUPERINTENDENT AT
ACF, ERIC SCHUESSLER, CORRECTIONS OFFICER,
ACF, R. ROEMESSER, INMATE ASSISTANT, ATTICA
CORRECTIONAL FACILITY,

                *Defendants-Appellees,*

ANTHONY J. ANNUCCI, JR., ACTING COMMISSIONER,
DOCCS, MAUREEN BOLL, DEPUTY COMMISSIONER
AND COUNSEL, DOCCS, JEFF MCKOY, DEPUTY
COMMISSIONER OF PROGRAMS, DOCCS, JOSEPH
BELLNIER, DEPUTY COMMISSIONER OF FACILITY
OPERATIONS OF DOCCS, DANIEL MASTRUCELLO,
DCFA-DOCCS, CARL J. KOENIGSMANN, DEPUTY
COMMISSIONER, CHIEF MEDICAL OFFICER OF

1

DOCCS, DONALD VENETTOZZI, ACTING SHU DIRECTOR OF DOCCS, LUCY BUTHER, OM-DOCCS, VERNON FONDA, INSPECTOR GENERAL, DOCCS, WILLIAM CANFIELD, MEDICAL DIRECTOR, SOUTHPORT CORRECTIONAL FACILITY, JAMES RAO, MEDICAL DIRECTOR, ATTICA CORRECTIONAL FACILITY, S. LASHESKI, MEDICAL DOCTOR, ACF, DALE ARTUS, SUPERINTENDENT, ATTICA CORRECTIONAL FACILITY, DEBORAH GRAF, PHYSICIAN ASSISTANT, ATTICA CORRECTIONAL FACILITY, DEBRA BONNING, R.N., ALICE SCHUNK, NURSE PRACTITIONER, ACF, J. DONAHUE, SHU COUNSELOR, ACF, J. CHISHALON, IGR SUPERVISOR, ACF, J. CROSS, MAILROOM SUPERVISOR, ACF, JANE DOE, PL-ACF, HELEN D. FOSTER, COMMISSIONER, DHR, SCHNEIDERMAN, NEW YORK ATTORNEY GENERAL, PETER BOGARAK, RMD, JOSEPH GULLO, AUDIOLOGIST, ACF, RICHARD DAINES, C-NYSDOM, S. MICHALEK, NA-ACF, THOMAS BELLEIN, C-COS-NYS, D. PRICHARD, RN,

*Defendants.*

FOR PLAINTIFF-APPELLANT:             RENEE K. JONES (Rule 46.1 (e) Law Student), JON ROMBERG (Carmella Campisano, Rule 46.1 (e) Law Student, *on the briefs*), Seton Hall University School of Law, Newark, NJ.

FOR DEFENDANTS-APPELLEES:             SARAH L. ROSENBLUTH (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*) *for* Letitia James, Attorney General of the State of New York.

Appeal from a June 5, 2018 order dismissing *sua sponte* four of Plaintiff-Appellant's claims and from a February 22, 2019 order denying Plaintiff-Appellant *in forma pauperis* status in the United States District Court for the Western District of New York (Frank P. Geraci, *Chief Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court as to Plaintiff-Appellant's *in forma pauperis* status is **VACATED AND REMANDED** and as to the *sua sponte* dismissal of four of Plaintiff-Appellant's claims is **REVERSED**.

Plaintiff-Appellant Reginald McFadden challenges (1) the District Court's revocation of his *in forma pauperis* (IFP) status, which resulted in the dismissal, for failure to pay the required filing fee, of five of his nine claims; and (2) the District Court's earlier *sua sponte* dismissal of his four other claims after screening under 28 U.S.C. §§ 1915A and 1915(e)(2)(B). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

*(1) IFP status*

Under 28 U.S.C. § 1915(a) any prisoner bringing a civil action may move to proceed IFP and thereby be exempted from filing fees. One exception to this rule—the so-called "three strikes" exception contained in 28 U.S.C. § 1915(g)—arises when that prisoner has, on at least three prior occasions, had an action or appeal "dismissed on the grounds that it [wa]s frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." But there is an exception to this exception: even when such a prisoner has accumulated three strikes, he may still move for IFP status if he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). McFadden, who concedes that he has at least "three strikes" to his name, claims that he nonetheless qualifies for IFP status in the instant action pursuant to this latter § 1915(g) exception.[1] Specifically, he claims that, owing to the fact that he has had Hepatitis C since 2002 and did not receive treatment for the condition through the time he filed his initial complaint in 2015—despite approval for such treatment in 2004—he has sufficiently demonstrated that he was in "imminent danger" such that he should be able to proceed IFP.

Initially, the District Court agreed, adopting a provisional determination that McFadden qualified for IFP status because of his Hepatitis C diagnosis and subsequent alleged non-treatment.[2] But upon motion of the Defendants after McFadden filed his Third Amended Complaint, the District Court revoked McFadden's IFP status, and required that he pay filing fees to proceed, which he ultimately did not do. McFadden contends that the District Court erred in its revocation.

---

[1] We recently vacated an order of the District Court denying IFP status to McFadden in a related case. We held that he demonstrated imminent danger in that case due to his heart condition, and thus should have been permitted to proceed IFP. *See McFadden v. Koenigsmann*, 798 Fed. Appx. 699 (2d Cir. 2020) (summary order). Notably, we entered judgment in the case although defendants, not having yet been served, did not make an appearance. *See infra* at 6 n.4.

[2] It was the District Court for the Northern District of New York which granted McFadden preliminary IFP status since that is where he initially filed his complaint. However, when he was transferred to Attica Correctional Facilities, a portion of his complaint was severed and transferred to the District Court for the Western District of New York. His preliminary IFP status remained until Defendants moved to revoke his IFP status and the Western District Court granted the motion.

"We review a district court's denial of IFP status pursuant to 28 U.S.C. § 1915 *de novo*." *Shepherd v. Annucci*, 921 F.3d 89, 93 (2019). "[B]ecause § 1915(g) concerns only a threshold procedural question"—specifically the question of whether "imminent danger" exists—we need not "make an overly detailed inquiry." *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010) (internal quotation marks omitted from first quotation). Indeed, we have warned against challenges to IFP status "metastasiz[ing] into a full-scale merits review." *Shepherd*, 921 F.3d at 96 (internal quotation marks omitted); *see also Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) ("[T]he imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading."). Instead, we must determine merely whether the allegations of imminent danger are "conclusory or ridiculous," in which case IFP status is properly denied, or whether they permit a plausible inference that such danger was real, in which case IFP status may be granted. *Chavis*, 618 F.3d at 170. We conduct such an inquiry mindful that when a prisoner proceeds *pro se* in the District Court, as McFadden did here, we must "construe his complaint liberally and interpret it to raise the strongest arguments that it suggests," *id.* at 171 (internal quotation marks and alterations omitted), "particularly when [the complaint] allege[s] civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

In order to demonstrate that some "danger" is "imminent," and thereby succeed in a motion to proceed IFP, a prisoner must plausibly allege the following: (1) that there is a danger to his physical well-being; (2) that the danger "exist[ed] at the time the complaint [wa]s filed," *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002); and (3) that the danger is "fairly traceable to unlawful conduct asserted in the complaint." *Pettus v. Morgenthau*, 554 F.3d 293, 299 (2d Cir. 2009) (emphasis omitted).

McFadden meets the first prong because he plausibly alleges that there was a danger to his physical well-being resulting from Hepatitis C. According to him, this danger resulted from the Defendants' failure to treat his chronic illness despite McFadden's approval for such treatment in 2004. The detail McFadden provides—including allegations in his complaint about the denial of treatment and other medical problems and unsanitary living conditions that could exacerbate his Hepatitis C; an affidavit in which he states that, because of the lack of treatment, he had "signs and symptoms of liver malfunction, with over ten million viral load counts" resulting in "constant pain and suffering," Aff. in Supp. of Imminent Danger and IFP Status, 2; and medical records from the Department of Corrections and Community Supervision ("DOCCS") showing potential treatment options—is enough to satisfy our threshold inquiry at this stage. *See e.g.*, *Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006) ("We need not resolve the precise contours of 'imminent danger' in this case because we think it clear that failure to provide adequate treatment for Hepatitis C, a chronic and potentially fatal disease, constitutes 'imminent danger.'"); *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam) (construing liberally *pro se* allegations that a prisoner suffered from Hepatitis C and was being denied treatment, and finding such allegations were non-conclusory).

4

McFadden meets the second prong of the "imminent danger" analysis because the danger he faced existed at the time his complaint was first filed. Although Defendants contend that McFadden began receiving Hepatitis C treatment in early 2017, after he filed his First Complaint and Second Amended Complaint—but before he filed his Third—this later treatment does not retroactively disqualify McFadden for IFP status. Rather, as we have stated, in determining whether "imminent danger" exists we "constru[e] [the prisoner's] initial and amended complaints to raise the strongest arguments that they suggest" and analyze whether "the facts alleged support a finding that he was in imminent danger at the time he filed his *initial* complaint." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotation marks omitted and emphasis added). At the time he filed his initial complaint, in 2015, McFadden plausibly alleged that he was in imminent danger, having received no treatment for his chronic condition dating back to his diagnosis in 2002. Indeed, the very fact that he allegedly began receiving treatment sometime after filing his complaint should not be held to obviate the imminent danger he faced—it should only further the inference that the danger he faced was real and deserving of treatment at the time his initial complaint was filed.

Finally, McFadden meets the third prong of the "imminent danger" analysis because the danger he faced is traceable to unlawful conduct alleged in his complaint—namely, his Eighth Amendment claim for deliberate indifference to his Hepatitis C, which we reinstate below. *See infra* Part (2)(a).

Accordingly, because McFadden's complaint, construed liberally, demonstrates "imminent danger" as defined under § 1915(g), he should be granted IFP status.[3]

*(2) Dismissed Claims*

Under 28 U.S.C. § 1915A a district court shall screen a complaint brought by a prisoner against the Government to determine whether the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or whether it "seeks monetary relief from a defendant who is immune from such relief." Similarly, under 28 U.S.C. § 1915(e)(2)(B) a district court shall screen a complaint brought by a plaintiff proceeding IFP to determine if "(A) the allegation of [plaintiff's] poverty is untrue; or (B) [if] the action or appeal -- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." If the complaint falls into any of these categories under either statute, the district court may dismiss all or part of the complaint *sua sponte*. It may do so even before defendants in the action have been served—as the District Court did for four of McFadden's claims here.

---

[3] Because we conclude that McFadden satisfied the "imminent danger" requirement due to his Hepatitis C diagnosis, we need not reach his alternative argument that he satisfied that requirement due to the threat of retaliation by prison guards.

Yet as we have long held, this "draconian" measure of pre-service dismissal should only be taken in rare circumstances. *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990). "It is . . . the well-established law of this circuit that *sua sponte* dismissal of a *pro se* complaint prior to service of process on defendant is strongly disfavored" since "[s]uch untimely dismissal deprives us of the benefit of defendant's answering papers." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam). Indeed, "[w]here a *colorable claim* is made out, dismissal is improper prior to service of process and the defendants' answer." *Benitez*, 907 F.2d at 1295 (emphasis added).

To determine whether any colorable claims were made out here, we review *de novo* the District Court's decision to dismiss four of McFadden's claims *sua sponte*. *McEachin*, 357 F.3d at 200.[4] Once again, because he proceeded *pro se* in the District Court, we construe McFadden's complaint liberally and note that "[w]e must reverse a district court's dismissal" after screening "whenever a liberal reading of the complaint gives any indication that a valid claim might be stated." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam).

We evaluate separately the four claims that the District Court dismissed: (a) McFadden's Eighth Amendment claim that Defendants' did not provide adequate medical treatment for his Hepatitis C; (b) his Eighth Amendment and Americans with Disabilities Act ("ADA") claim that Defendants' failed to provide him auditory aids; (c) his Eighth Amendment claim regarding his conditions of confinement; and (d) his First Amendment claim that Defendants interfered with his legal mail.

---

[4] Defendants-Appellees Joseph Noeth, Eric Schuessler, and R. Roemesser argue that we do not have personal jurisdiction over all 36 Defendants listed in this case, and therefore they only address the four dismissed claims as they pertain to the three of them. It is true that, after these four claims were dismissed by the District Court pre-service, the only Defendants that received service on the remaining claims were Noeth, Schuessler, and Roemesser. It is for this reason that they are the only ones who appear in this appeal. However, we have long held that we can review the pre-service *sua sponte* dismissal of claims against other defendants, even if they are not before us, since we only review to determine whether the claims dismissed against them were colorable. *See, e.g.*, *McEachin*, 357 F.3d at 200 (noting that the Court would review the District Court's screening of plaintiff's complaint despite the fact that "defendants, who were not served with and did not file an answer to plaintiff's complaint" did not "submit a brief nor participate in the oral argument of this appeal"); *see also Lewis v. State of N.Y.*, 547 F.2d 4, 6 (2d Cir. 1976) (vacating premature dismissal and remanding for service of process). Therefore, even if McFadden's claims are reinstated, there is no prejudice against the absent defendants, who after service will be able to file dispositive motions about whether those claims are truly viable. Were we unable to take this step and review the pre-service *sua sponte* dismissal of claims because certain defendants were not before us, then we would likely never have jurisdiction to review a district court's actions under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B).

(a) Adequacy of medical treatment

McFadden contends that Defendants violated his Eighth Amendment rights by failing to provide him adequate medical care—more specifically, by failing to provide him treatment for his Hepatitis C. To state a claim for inadequate medical care under the Eighth Amendment, a plaintiff must allege first, that the "deprivation [of care]. . . [is], objectively, sufficiently serious," and second, that the "prison official . . . [acted with] a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted).

Construing his complaint liberally, we conclude that McFadden has stated a colorable claim that his Eighth Amendment rights were violated due to the inadequate treatment of his Hepatitis C. First, he sufficiently alleges, as noted above, that his condition is objectively serious and that he was nonetheless completely deprived of treatment prior to his complaint, despite approval for treatment in 2004. As we have said, a condition is objectively serious if, among other things, "a reasonable doctor or patient would find [it] important and worthy of comment" or if "it causes chronic and substantial pain" to the inmate. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (internal quotation marks omitted). McFadden provides sufficient detail describing the risk of further degeneration of his liver and the onset of chronic illness if his Hepatitis C is left untreated. *See Chance v. Armstrong*, 143 F.3d 698, 702 )2d Cir. 1998) (noting that "condition[s] of urgency that may result in degeneration or extreme pain" are objectively serious under the Eighth Amendment (internal quotation marks omitted)); *see also Erickson*, 551 U.S. at 94 (noting that a complaint alleging imminent harm from lack of Hepatitis C treatment was enough to state a claim under the Eighth Amendment). And indeed, the very fact that Defendants allegedly began treatment after he filed his complaint suggests that the condition was objectively serious enough to merit treatment in the first place.

Second, McFadden sufficiently alleges that Defendants acted with deliberate indifference in denying him treatment. Prison officials are deliberately indifferent to an inmate's health, and thus have a sufficiently culpable state of mind, when they "act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280. McFadden sufficiently alleges that Defendants denied him treatment for Hepatitis C despite his approval for it, thus colorably claiming that Defendants acted with a culpable state of mind. According to his complaint, Defendants knew of a risk of harm as early as 2002, received approval for treatment in 2004, and then did not provide it. Whether this timeline is correct is to be determined at a later stage, but for now McFadden provides enough detail regarding the timeline that he should be permitted to proceed.

Accordingly, since McFadden colorably makes out both prongs of an Eighth Amendment claim, that claim should not have been dismissed *sua sponte*.

(b) Failure to provide hearing aids

7

McFadden contends that Defendants' refusal to provide him auditory aids violated both the ADA and the Eighth Amendment.

To state a claim under the ADA for failure to provide a reasonable accommodation, an inmate "must show that 1) he is a qualified individual with a disability; 2) [the prison] is an entity subject to the [ADA]; and 3) he was denied the opportunity to participate in or benefit from [prison] services, programs, or activities or [the prison] otherwise discriminated against him by reason of his disability." *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervsion*, 831 F.3d 64, 72 (2d Cir. 2016). Discrimination under the third prong can include "failure to make a reasonable accommodation" for the inmate. *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003). McFadden's complaint, construed liberally, states a colorable ADA claim. First, he sufficiently alleges that he qualifies as an individual with a disability because of his documented hearing impairment. *See* 42 U.S.C. § 12102(1)-(2) (noting that disability under the ADA includes an impairment to "hearing" or "communicating"). Second, he sufficiently alleges that the prisons where he has been held are public entities subject to the ADA. *See Wright*, 831 F.3d at 72. And finally, he sufficiently alleges that he was denied access to plausible accommodations—working hearing aids and a "shake-awake" alarm—which would have mitigated the impairment and permitted him to meaningfully participate in normal programs and activities. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003) (noting that "it is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits" (alteration omitted)). Accordingly, his claim that he should have been provided such auditory devices in compliance with the ADA—which the District Court did not even address—should be reinstated.

In addition, his claim can proceed under the Eighth Amendment, since his pleadings, construed liberally, meet the low threshold of being colorable. Once again, to state an Eighth Amendment claim for indifference to a medical need, a plaintiff must meet the objective and subjective prongs outlined above: the medical need must be objectively serious and the defendants must have acted with subjective intent, including deliberate indifference, to that need. A medical need can be considered objectively serious when, among other things, it prevents an inmate from "engag[ing] in normal activities" *Chance*, 143 F.3d at 703, and when failing to address it is "inconsistent with contemporary standards of decency." *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (internal quotation marks omitted). Here, McFadden sufficiently alleges that the denial of hearing aids precluded him from engaging in normal activities and that the denial of a "shake-awake" alarm increased the risk he would fail to appear for morning counts—which could result in punishment. Moreover, he sufficiently alleges that the denial of either a working hearing aid or a "shake-awake" alarm was the result of Defendants' deliberate indifference, since he alleges that he made requests for such devices and that Defendants were aware of his diagnosis as hearing impaired. Further, he sufficiently alleges that—when the Defendants' decided to disregard his diagnosis because they thought it unreliable—they failed to undertake any additional evaluation of his hearing.

8

Taken together, these allegations amount to a colorable claim that, in denying McFadden hearing aids and a "shake-awake" alarm, Defendants' violated his Eighth Amendment rights.

(c) Conditions of confinement

McFadden contends that the conditions of his confinement violated his Eighth Amendment rights. "To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and alterations omitted).

McFadden alleges that he suffered from the following when he was placed under mental health observation and when he was placed in the Special Housing Unit. In the former, he alleges he was denied "food, showers, eye-glasses, hearing aids or medication." App. 216. In the latter, he alleges, among other things, that he was housed with inmates who "kick, yell, bang, throw feces [and] urine, leave waste in showers [and] blood on walls." App. 194. He also alleges that he was subjected to cold weather and cold showers, and denied hot water, and subjected to "[e]xcessive and [h]arassing use of [a] leg iron that re-injured a prior broken left ankle bone." App 227. He claims that Defendants knew of these conditions and failed to take action to mitigate them.

Construed liberally, these allegations amount to a colorable claim that the conditions of McFadden's confinement violated the Eighth Amendment. "[W]e have long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker*, 717 F.3d at 127. Such circumstances include those in which the area in front of a prisoner's cell is "filled with human feces, urine, and sewage water," *Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001), those in which a prisoner's cell is "fetid and reeking from the stench of the bodily waste of previous occupants," *Wright v. McCann*, 387 F.2d 519, 522 (2d Cir. 1967), and those in which a prisoner's cell has "urine and feces splattered on the floor." *Walker*, 717 F.3d at 126. We have also recognized that conditions leading to sleep deprivation, prolonged exposure to cold temperatures, and circumstances in which other inmates pose a "substantial risk" to a plaintiff may be unconstitutional. *See Id.* 126-28. McFadden sufficiently alleges similar conditions here, at the very least meeting his burden of showing that the conditions he experienced were, under the colorable standard, "objectively" serious.

He also met his burden of showing that that Defendants acted with sufficient culpability under that same standard. We have stated that "[e]vidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Id.* at 125. Here, McFadden's complaint, liberally construed, suggests that certain Defendants' would have been aware of the conditions to which he claims he was

9

subjected, either because they caused the conditions to occur (i.e. cold weather exposure) or because the conditions were easily noticeable. *See Gaston*, 249 F.3d at 165 (noting that merely alleging that defendants made "daily rounds" of a prison and were "directly responsible" for an inmate's placement is enough to claim they had actual knowledge of the conditions of confinement). His allegation that Defendants failed to act despite such knowledge is enough to state a colorable claim under the Eighth Amendment.

(d) Interference with legal mail

McFadden contends that Defendants, on at least twenty occasions, interfered with his mail in violation of the First Amendment. "[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment" *Bacon v. Phelps*, 961 F.3d 533, 543 (2d Cir. 2020) (internal citations omitted). This right is violated if a prison "regularly and unjustifiably" interferes with a prisoner's legal mail. *Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012) (quoting *Davis v. Goord*, 320 F. 3d 346, 351 (2003)). Examples of unjustifiable interference include prison officials engaging in "an ongoing practice of censorship" or delaying the delivery of mail to a prisoner in a way that "cause[s] him to miss court deadlines or in any way prejudice[s] his legal actions." *Davis*, 320 f.3D at 351-52.

McFadden sufficiently alleges the latter, stating that the interference with his mail "resulted in two major court actions being dismissed/defaulted." App. 191. That allegation, along with the detail McFadden provides about the mailings he states were intercepted and the forms of administrative review he sought, amount to a colorable claim that his First Amendment right was violated due to interference with his mail.

**CONCLUSION**

For the foregoing reasons, we **VACATE** the order of the District Court revoking McFadden's IFP status, **REVERSE** the order as to the *sua sponte* dismissal of (1) McFadden's Eighth Amendment claim that Defendants did not provide adequate medical treatment for his Hepatitis C, (2) his Eighth Amendment and ADA claims that Defendants failed to provide him auditory aids, (3) his Eighth Amendment claim regarding his conditions of confinement, and (4) his First Amendment claim that Defendants interfered with his legal mail, and **REMAND** the cause for further proceedings consistent with this order.

We take this opportunity to underscore that our review to date has been limited to the threshold issues identified above, and that we have not asserted nor intimated any view on whether the various claims asserted by McFadden could survive a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6).

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk