# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3022
_____

Kenneth G. Charron

*Plaintiff - Appellant*

v.

Larry Allen, in his Individual Capacity

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal
_____

Submitted: January 13, 2022
Filed: June 14, 2022
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

Kenneth Charron is a Missouri inmate currently in custody at the Northeast Correctional Center (NECC). He suffers from multiple medical conditions, including cancer, kidney disease, renal failure, and pain in his arms, legs, and back. Dissatisfied with ongoing treatment of these conditions, Charron filed this *pro se* § 1983 action on May 7, 2018 against multiple defendants, claiming deliberate indifference to his serious medical needs and retaliation for filing grievances. In an

Order dated July 24, 2018, the district court granted Charron's motion to proceed *in forma pauperis* on his individual capacity claims against Dr. Miguel Paniagua, an employee of Corizon LLC, and Larry Allen, an employee of the Missouri Department of Corrections serving as food service manager at NECC during the time in question. Charron v. Whitlock, No. 2:18-cv-00032-PLC, 2018 WL 3546763, at *11 (E.D. Mo. July 24, 2018). The case was then randomly assigned to a different district judge.

After discovery that included Charron's deposition, Allen moved for summary judgment, arguing he was not responsible for the April 2018 decision to discontinue Charron's physician-prescribed renal diet. In his *pro se* response, Charron challenged the cancellation of his renal diet. He also argued that Allen's motion "fails to respond to 'all' of plaintiff's claim(s), as set out in plaintiff's complaint." The response specifically referenced the Complaint's detailed allegations that Allen had repeatedly stopped and interfered with Charron's physician-prescribed medical diets from June 2015 until the renal diet was discontinued and retaliated against Charron for filing grievances protesting Allen's failure to comply with the prescribed diet. Allen's summary judgment reply falsely accused Charron of "switching horses midstream and pursuing a new theory."

On March 11, 2020, the district court granted Allen's motion for summary judgment because Allen "was not responsible for canceling plaintiff's renal diet . . . the deprivation about which plaintiff complains [and therefore] defendant Allen could not be responsible for either a deliberate indifference or a retaliation claim." With no explanation, the court did not address Charron's additional claims alleging that Allen, prior to the cancellation, repeatedly stopped and otherwise interfered with Charron's physician-ordered medical diets, claims that the court's July 2018 Order ruled were "sufficient to survive initial review under 28 U.S.C. § 1915(e)(2)(B)." We conclude it was error to grant summary judgment dismissing Charron's complaint against Allen

without addressing these additional claims. Therefore, we vacate the March 11, 2020 Memorandum and Order in part and remand for further proceedings.[1]

## I. The Claims Against Defendant Allen

Charron's claims against defendant Allen were limited to Allen's actions as food services manager regarding Charron's physician-prescribed medical diets. The *pro se* Complaint included eighty-eight numbered paragraphs covering multiple medical treatment issues that included the following diet-related allegations. As early as 2002, NECC medical staff prescribed a "Double Bland" medical diet to mitigate Charron's esophageal diseases. This diet was periodically renewed until July 2015, when Dr. Cabrera, a non-defendant, changed the Double Bland to a "Double Renal" diet because of Charron's chronic kidney disease, recovery from surgical removal of his cancerous right kidney, and malfunctioning left kidney.

In June 2015, Allen and his food service staff allegedly began giving Charron food not allowed under the Double Bland diet. Charron complained and in late July, Allen's wife, a Corizon nurse, "canceled" Charron's new Renal Diet. When Charron filed an Informal Resolution Request (IRR) against Allen and his wife under NECC's grievance procedures, claiming retaliation for Charron's previous filing challenging Allen's interference with the Double Bland diet, Allen resumed the Renal Diet. But he stopped it again in November after Charron filed a grievance appeal regarding his retaliation charge. In August 2016, Allen and another Corizon nurse again stopped the Renal Diet until Dr. Rhodes ordered it resumed. Charron filed additional IRRs about not getting his doctor-ordered Renal Diet in August 2016 and July 2017.

---

[1]Defendant Paniagua filed a separate summary judgment motion which the district court granted for the same reason. Charron did not respond to Paniagua's motion and does not appeal this ruling. Thus, defendant Allen is the only appellee and only claims against Allen are at issue.

Charron was again not provided his Renal Diet in April 2018. The Complaint alleged that, on April 2, 2018, a food service defendant stopped Charron, said that Allen and Dr. Paniagua had stopped his Diet tray, and told him, "file on that." He filed this action on May 7 asserting, as to defendant Allen, an Eighth Amendment claim for deliberate indifference to his serious medical needs, and a First Amendment retaliation claim for denying Charron his diet in response to grievance filings. The summary judgment record established that Dr. Jerry Lovelace, who is not a defendant in this action, ordered that Charron's Renal Diet be discontinued on March 29, 2018.

## II. Procedural History

As amended by the Prisoner Litigation Reform Act of 1995 (PLRA),[2] 28 U.S.C. § 1915(b) provides that a prisoner who brings a civil action or files an appeal in forma pauperis (IFP) "shall be required to pay the full amount of a filing fee" (unless he has no assets and no means by which to pay). In most cases, he may pay the fee in installments. 28 U.S.C. § 1915(b)(2). However, if he had three prior civil suits or appeals dismissed as malicious, frivolous, or for failure to state a claim, § 1915(g) -- commonly known as the "three strikes" provision -- provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

"Congress enacted the PLRA with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims." Lyon v. Krol, 127 F.3d 763, 764 (8th Cir. 1997), citing H.R. Rep. No. 104-

[2]Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (Apr. 26, 1996).

378, at 166-67 (1995) (Conf. Rep.); see Jones v. Bock, 549 U.S. 199, 204 (2007) ("Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good."). Prisoners who file an action or appeal that is subject to § 1915(g) incur the greatest cost deterrent -- immediate payment of the full filing fee. Section 1915(g) does not prohibit prisoners from pursuing such claims. "It only limits their ability to proceed [IFP]." Lyon, 127 F.3d at 765; see generally Lewis v. Sullivan, 279 F.3d 526, 530-31 (7th Cir. 2002).

It is undisputed that Charron had three prior lawsuits dismissed for reasons that qualify as "strikes" under § 1915(g). He nonetheless filed a motion to proceed IFP along with his *pro se* complaint. As Charron was a prisoner seeking redress from government officials, the district court conducted a pre-service screening to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1), incorporating grounds for dismissing an IFP action set forth in § 1915(e)(2)(B)(i) and (ii). The screening issue for the court in this case was the extent to which the "imminent danger" exception to § 1915(g) applied to Charron's multiple claims against multiple defendants. The court addressed that issue in its July 24, 2018 Order.

To satisfy § 1915(g)'s imminent danger exception, the danger "must exist at the time the complaint or appeal is filed, not when the alleged wrongdoing occurred." Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (citation omitted). Some circuits have also required "an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges," that is, he must allege "an imminent danger of serious physical injury that is fairly traceable to a violation of law that the complaint asserts." Pettus v. Morgenthau, 554 F.3d 293, 296 (2d Cir. 2009); accord Pinson v. U.S. Dept. of Justice, 964 F.3d 65, 71-72 (D.C. Cir. 2020).

In its July 24, 2018 Order, the district court addressed this issue on a claim-by-claim basis. As to defendant Allen, the court concluded that Charron's "claims against Allen for failing to provide an adequate diet and for retaliation are sufficient to survive review under § 1915(e)(2)(B)." The earlier claims regarding incidents where Charron's "medical diet was stopped, restarted, and stopped again" allege only danger he faced in the past and are therefore "insufficient to trigger" the imminent danger exception. But Charron's "allegation that Allen [and Dr. Paniagua] refused to give him the appropriate diet beginning on April 2, 2018 is sufficient to demonstrate imminent danger." The court went on to review Charron's claims against the remaining defendants and concluded they "fail to allege sufficient facts to enable plaintiff to use the imminent danger exception in § 1915(g)." The summary judgment proceedings at issue on appeal followed.

### III. The Three Strikes Issue on Appeal

The district court's claim-by-claim approach to the "imminent danger" exception was consistent with the plain language of § 1915A(b) and finds some support in our prior decisions. See McAlphin v. Toney (McAlphin II), 375 F.3d 753, 755 (8th Cir. 2004) ("[U]nder the 'imminent danger' exception, the i.f.p. action *must be limited to imminent danger claims* that have been properly exhausted.") (emphasis added); Martin, 319 F.3d at 1050-51. But this interpretation has been rejected by other circuits. See, e.g., Chavis v. Chappius, 618 F.3d 162, 171-72 (2d Cir. 2010) ("a plaintiff filing IFP on the basis of the imminent danger exception can proceed with all claims in her complaint."); Andrews v. Cervantes, 493 F.3d 1047, 1053-54 (9th Cir. 2007). We have never addressed this apparent conflict. Thus, when Charron's *pro se* brief on appeal complained that the district court should have addressed his pre-cancellation diet interference claims, our customary initial review of *pro se* appeals suggested the appeal may raise a significant unresolved § 1915(g) issue. So

we set the case for oral argument, appointed counsel for Charron, and asked both counsel to address the issue at oral argument. We appreciate their efforts to do so.[3]

Upon thorough review of the record, we conclude this serious issue that no doubt needs greater attention if presented in a proper case is not presented in this case for a basic reason that we initially overlooked. The district court's July 24, 2018 *opinion* approached the imminent danger exception on a claim-by-claim basis, which is required to determine if an imminent danger that is related to at least one claim being asserted existed when the complaint or appeal was filed. But the Court's July 24, 2018 *Order* stated in relevant part:

> **IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis . . . is **GRANTED** as to defendants Miguel Paniagua and Larry Allen.

This Order granted Charron IFP status under § 1915(b) for all claims asserted against Allen in his *pro se* complaint (other than official capacity claims that are not at issue). In other words, as to Allen, the district court granted Charron *full* § 1915(g) relief. The court also dismissed Charron's claims against other defendants because those claims did not satisfy the imminent danger exception. This partial dismissal of Charron's entire complaint was arguably contrary to the above-cited cases from other circuits. But Charron did not appeal the without-prejudice dismissal of those

---

[3]We note that Allen's repeated attempts to stop Charron's diet beginning in 2015 were arguably part of a "pattern of misconduct" demonstrating an "ongoing serious physical injury" to his health that would satisfy the imminent danger exception under our precedents. Martin, 319 F.3d at 1050; see McAlphin v. Toney (McAlphin I), 281 F.3d 709, 710-11 (8th Cir. 2002); Ashley v. Dilworth, 147 F.3d 715, 717 (8th Cir. 1998); cf. Pinder v. McDowell, 619 F. App'x 565, 566-67 (8th Cir. 2015). For the reasons that follow, we need not take up this issue.

defendants, so we leave that issue to another day and turn to the merits of the court's March 2020 decision to grant summary judgment in favor of Allen.

## IV. Summary Judgment Issues

After discovery, Allen moved for summary judgment dismissing Charron's Complaint. As noted, Allen argued that summary judgment was warranted because undisputed facts show that Allen was not responsible for discontinuing Charron's Renal Diet in April 2018. The motion ignored lengthy allegations in the Complaint alleging that Allen's repeated discontinuing and interfering with Charron's physician-prescribed medical diets from June 2015 to April 2018 separately supported claims of deliberate indifference to Charron's serious medical needs and retaliation for his protected activity of filing grievances. Perhaps Allen carelessly misread the court's July 2018 Order. More likely, he wished to test whether Charron, proceeding *pro se*, would accept this framing of the relevant issues.[4] Properly viewed, this was a motion for *partial* summary judgment on the claim that Allen discontinued Charron's Renal Diet in April 2018.

Charron's *pro se* response to the motion for summary judgment did not take Allen's bait. He specifically and correctly argued that Allen "fails to respond to 'all' of plaintiff's claim(s), as set out in plaintiff's complaint," identifying claims that Allen repeatedly discontinued and interfered with Charron's medical diets from June

_____

[4]The record makes clear that Charron's dominant medical concern was, understandably, resumption of his Renal Diet. He testified at his deposition:

> Q. What remedy are you seeking to recover from Mr. Allen?
> A. Realistically, all I want is my medical diet. . . . My cancer has gotten worse. . . . Give me my diet, we can walk away from this.

In no way did this testimony limit the claims in his Complaint.

-8-

2015 to April 2018, a period during which they were physician-prescribed. Allen's Reply falsely accused Charron of arguing a new theory. It did not argue that undisputed material facts warranted summary judgment on additional claims that the court determined in its July 2018 Order were sufficiently pleaded to survive initial § 1915(e)(2)(B) review.

In granting Allen's motion, the district court, after summarizing the legal standards governing these Eighth Amendment and retaliation claims, correctly stated the summary judgment issue:

> [Charron] claims Allen was deliberately indifferent to his serious medical need by not providing plaintiff with his doctor-ordered medical diet. [He] also claims Allen retaliated against plaintiff for filing IRRs and Grievances against Allen and Allen's wife (a nurse at the prison) by not giving him his doctor-ordered medical diet.

However, without explanation, the court then addressed only the claim that Allen was responsible for discontinuing the Renal Diet in April 2018.

In his *pro se* brief on appeal, Charron argues the district court should have considered his claims that Allen unlawfully interfered with his *physician-prescribed* diet from 2015 through 2018. We agree. These claims were clearly pleaded in the Complaint and argued by Charron in opposing Allen's motion for summary judgment. They rather obviously involve disputed issues of material fact that an appellate court cannot resolve on this summary judgment record. Nor can we determine on this record that Charron failed to present a submissible case of deliberate indifference to his serious medical needs and unlawful retaliation for filing grievances. Thus, reviewing the grant of summary judgment de novo and taking the well-pleaded allegations in the complaint as true, we conclude that the grant of summary judgment dismissing Charron's entire Complaint against Allen must be vacated and remanded.

See Flemming v. Corr. Corp. of Am., 72 F. App'x 776, 778 (10th Cir. 2003); Porter v. Sturm, 781 F.3d 448, 451 (8th Cir. 2015) (standard of review).

"[A] claim falling within the imminent danger exception to 28 U.S.C. § 1915(g) must nonetheless meet the mandatory exhaustion requirements of 42 U.S.C. § 1997e(a)." McAlphin II, 375 F.3d at 755. Under the PLRA, "[e]xhaustion is no longer left to the discretion of the district court." Woodford v. Ngo, 548 U.S. 81, 85 (2006). Though exhaustion is an affirmative defense that can be waived, Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001), Allen asserted exhaustion as an affirmative defense in his separate answer to Charron's complaint. In granting summary judgment, the district court did not consider exhaustion because it did not address Charron's 2015-2018 interference and retaliation claims. Thus, that issue remains open on remand. See McAlphin II, 375 F.3d at 755-56.

## V. Conclusion

For the foregoing reasons, that portion of the district court's Order of March 11, 2020 granting summary judgment in favor of Defendant Allen is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

_____